HESDORFFER *et al. v.* WELSH.

[90 South. 3. No. 22080.]

.1 MORTGAGES. *Trustee's sale under notice erroneously describing land void.*

Where a deed of trust incorrectly describes the land owned and intended to be conveyed, and the description of the land is followed by the words, "We mean to convey all the lands and horses that we own whether properly described or not," and the trustee undertakes to foreclose without resorting to equity. and advertises the land by the wrong description, without including in his notice of sale the above-quoted provision or calling attention thereto in such notice, such sale is void and passes no title.

2. MORTGAGES. *Sale by description of land not embraced in deed, but really owned, void.*

In such a second sale, made by the trustee *in pais* using the description of the land really owned, but not embraced in the trust deed, and where the above clause, "We mean to convey all the lands and horses that we own, whether properly described or not," is not inserted in the notice of sale, and with nothing in the notice to call attention to the error of description in the deed of trust, is insufficient to pass the title. The proper course in such case is by bill in equity to reform and then foreclose.

3. MORTGAGES. *Sale after proper tender may be set aside; tender to holder of trust deed held sufficient.*

Where a maker of a deed of trust tenders to the holder the amount due before foreclosure, and the holder refuses to accept the amount so tendered, it is proper to set aside a sale and to deny trustee's fees and other costs incurred after such tender. Where the maker of a deed of trust asks the holder for the amount due, stating that he is prepared to pay it off, and has the money ready to pay if it is

accepted, but is told it will not be accepted, it is good as a tender, though the actual money was not counted out and formally offered. The refusal to accept the money dispenses with its actual production.

4. MORTGAGES. *Price under foreclosure sale held grossly inadequate.*

Where land was offered for sale at a second attempted foreclosure, brought at such sale only one hundred dollars, and where it had recently sold at private sale for one thousand, two hundred dollars cash, the price was grossly inadequate, and the sale should be set aside.

APPEAL from chancery court of Madison county.

HON. V. J. STRICKER, Chancellor.

Bill by J. T. Welsh against I. Hesdorffer and others. From the decree defendants appeal. Affirmed.

*W. H. & R. H. Powell,* for appellant.

*E. B. Harrell,* for appellee.

*Robert Rickets, Amicus Curiae.*

ETHRIDGE, J., delivered the opinion of the court.

J. T. Welsh filed a bill in the chancery court of Madison county, alleging that in March, 1916, the complainant was the owner of the east half of the southeast quarter of the southwest quarter, section 35, township 10, range 5 east, and also the northeast quarter of the northwest quarter of section 2, township 9, range 5; that on the 13th day of March, 1916, he and his wife executed a deed of trust for five hundred and sixty-two dollars and thirty-six cents for the benefit of the appellant Hesdorffer. He further alleged that in the fall of 1916 the appellant gathered the crops off of said land and delivered them to Hesdorffer to be credited on said deed of trust but that, owing to short crops, low prices, and sickness in his family, complainant was unable to pay off said deed of trust at maturity, and that on the 16th of April, 1917, the trustee in the deed of trust under-

took to sell the land by foreclosure; that the trustee advertised the lands and personal property for sale, fixing in the advertisement the date of the sale as April 16, 1917, which notice was published in a newspaper in the county under dates of March 23, 1917, March 30, 1917, and April 6, 1917, and that the lands were offered for sale under the above-mentioned notice on said day, and that Hesdorffer appeared and paid the sum of four hundred dollars therefor.   It was further alleged that the personal property as described in the deed of trust, though advertised for sale, was not offered for sale, but in truth and fact was sold to divers parties at private sales; that the trustee making said pretended sale delivered the appellant a deed conveying lands described as the east half of southeast quarter, of southeast quarter, section 35, township 10, range 5 east, also the northeast quarter of the northwest quarter of section 2, township 9, range 5 east, copy of which is made an exhibit to the bill; that on January 2, 1920, Hesdorffer in consideration of twelve hundred dollars executed and delivered to M. I. Wood the lands conveyed to him by the said trustee, copy of which deed is made an exhibit to the bill.   It is further alleged that after the conveyance to Wood, Hesdorffer and the trustee discovered that they had erred in the foreclosure of the said deed of trust, and that the sale had not been foreclosed according to law; that they further discovered that they had conveyed to Wood twenty acres which did not belong to the complainant, to-wit, the east half of the southeast quarter of the southeast quarter, section 35, township 10, range 5 east, and that in an attempt to correct their error they advertised the land again in the said newspaper, which advertisement was published in the newspaper on March 19, 1920, March 26, 1920, April 2, 1920, and April 9, 1920, and that on April 12, 1920, in accordance with their notice, and pretending to act by virtue of the authority vested in them under the deed of trust, they offered for sale the land described as the east half of southeast quarter of southwest quarter, section 35, township 10, range 5, and the northeast quar-

ter of the northwest quarter of section 2, township 9, range 5, when said Hesdorffer appeared and paid one hundred dollars, and that deed was made to Hesdorffer, and by him another deed to Wood. Notices and deeds were made exhibits.

It is alleged that prior to the day of the second sale under said deed of trust Welsh by his attorney went to Hesdorffer and to the trustee and offered to pay all that was due and owing under the note and deed of trust, and Hesdorffer refused to allow them to pay off said account, and refused to make any settlement thereof. It is further alleged that the attorney for the plaintiff went to the trustee and to Hesdorffer on the day of the last sale prior thereto, and announced that he was prepared to take up and pay off the said debt. It is further alleged that the said sales were illegal, and vested no title in Hesdorffer, and especially as to the east half of the southeast quarter of the southwest quarter, section 35, township 10, range 5 east, because this portion of said land was not included in the deed of trust. It is further alleged that on the 13th day of March, 1916, Hesdorffer took possession of the said premises, and used the same for his sole use and benefit to the exclusion of the complainant, and that he rented the lands for the various years intervening between that date and the filing of the suit.

The bill prayed for an ascertainment of the true amounts due Hesdorffer, the amount received by him from the sale of the personal property alleged to be turned over to him, and to ascertain the rents and profits received by the defendant while in possession of said lands, and that Hesdorffer be required to produce an itemized statement making up the sum total, and tendered or offered to pay the money into court whatever the court might find to be due.

The deed of trust given to Hesdorffer and made exhibit to the bill in conveying the lands read as follows, after describing the personal property:

"Also the east half of the southeast quarter of southeast quarter, section 35, township 10, range 5, and northeast

quarter of northwest quarter, section 2, township 9, range 5. We mean to convey all the lands and horses that we own, whether properly described above or not, and all other property that said party or parties of the first part own or of which the said party or parties of the first part have any interest. The above-described property belongs to the party or parties of the first part and to no one else and there is no lien on same, or any part thereof, except this lien, unless otherwise mentioned in this instrument and said property is all the property of such description or kind owned by the said party or parties of the first part."

The defendants in their answer averred the truth to be that the lands conveyed by the said deed of trust were described as the east half of the southeast quarter of the southeast quarter, section 35, township 10, range 5, and the northeast quarter of northwest quarter, section 2, township 9, range 5, and the east half of the southeast quarter of southwest quarter, section 35, township 10, range 5, which it is alleged was embodied and carried by the words in the said deed of trust, namely:

" 'We mean to convey all of the land and horses that we own, whether properly described or not;' and your respondents aver that on said date said Welsh owned the said east half of southeast quarter of southwest quarter, section 35, township 10, range 5 east, and that it passed by said deed of trust."

They denied the allegation that the personal property was not sold in 1916 when the land was sold, and denied that it was sold at private sale until after Hesdorffer had purchased it at said sale.

It is further alleged in the answer that the sale was made in strict accordance with the law as then understood by counsel generally and counsel for the complainant in particular, and further alleges in the answer that the decision of this court in *Planters' Mercantile Co.* v. *Braxton,* 120 Miss. 470, 82 So. 323, and the *Maris Case,* 124 Miss. 742, 87 So. 13, was contrary to the general accepted views of the bar, and that certain other decisions under other

statutes had upheld publications made more than one week before the date of sale. It denied that the tender of the amount due was paid or offered to be paid prior to the last sale. It denied that the complainant was entitled to the relief prayed for, or any relief, and then by way of a cross-bill alleged "that on the 13th of March, 1916, complainant and his wife owed Hesdorffer five hundred and sixty-two dollars and thirty-six cents, with interest at eight per cent per annum, which was secured by deed of trust upon the land sued for, and that the said property at the time of the sale in 1917 was not worth the debt secured by the deed of trust, and that the complainant, realizing this, wrote to Hesdorffer, requesting Hesdorffer to pay his taxes. That he did not have anything to pay them with; that he would have to sell or turn over to Hesdorffer; that his wife had consumption, and that he wanted to carry her to Texas in a few days; and that later he wrote a second letter as follows:

"You may take charge of what you see fit to satisfy you, but I would be glad and thankful if you would allow me to sell my corn and help me along," which letter it is claimed operated as an estoppel against the claims for personal property. It further alleged that the note called for ten per cent, attorney's fee to be added to the debt, and that the trustee posted a notice on March 19, 1917, on the south door of the courthouse which remained posted until the 16th day of April, 1917, and that he had a copy of said notice published in a county paper March 23, 1917, March 30, 1917, and April 6, 1917, and that he sold the said property to Hesdorffer on April 16, 1917, for the sum of four hundred dollars cash; there was no daily paper published in Madison county, but only a weekly; that after the sale Hesdorffer took possession of the property, thinking all was all right, "when like a clap of thunder from a clear sky in August, 1919, the decision in the Braxton Case was rendered;" that since April 16, 1917, lands have increased in value from twenty-five per cent to one hundred per cent while the purchasing power of the dollar has decreased from thirty-three per cent to sixty per cent.

It is further alleged that if the first sale was invalid there was due on the deed of trust on the 12th day of April, 1920, the sum of seven hundred and seventy-nine dollars and five cents, that he had paid the taxes on said lands for 1917, 1918, and 1919, amounting to a total of thirty-eight dollars and nine cents, which they claim to be a lien on the land.

The defendant Wood alleges that he bought the land from Hesdorffer in good faith for twelve hundred dollars cash. The cross-bill alleges that the defendant placed permanent improvements upon the land, and prayed that on final hearing a decree be rendered that the sale made by the trustee in 1917 was valid, and that the deed to Wood, executed January 20, 1920, vested in him title thereto; that, if mistaken in that, then the said debt in deed of trust be reestablished and held to be a lien on said lands as well as on the improvements, and that a commissioner be appointed to make the sale, and that all of said obligations be repaid with legal interest.

The cross-bill was demurred to, the demurrer was sustained, and certain amendments made setting up that the decisions of this court in *Kemp* v. *Hazlehurst,* 80 Miss. 445, 31 So. 908, and *Weston* v. *Hancock County,* 98 Miss. 809, 54 So. 307, constituted an announcement of the law on publications for sales, and that these decisions were integrated into the deed of trust and constituted a contract, and that a change of these decisions by the announcement in the Braxton Case and the Maris Case would be to impair the obligations of the contract, and would be the taking of the cross-complainant's property without due process of law.

On the hearing it appears without dispute that the sale made in 1917 under the deed of trust described the land as the east half of southeast quarter of southeast quarter, section 35, township 10, range 5 east, and the northeast quarter of northwest quarter of section 2, township 9, range 5 east, and that the notice of advertisement or the deed did not contain the provision in the deed of trust reading:

"We mean to convey all the lands and horses that we own, whether properly described above or not."

It appeared also that prior to the sale of 1920 that the attorney for the complainant went to Hesdorffer and stated that he was prepared to take up the deed of trust and offered to do so. It is also testified that he went to the trustee and made a similar statement. and the chancellor found with the complainant as to these facts.

There was no effort made so far as the record shows to have the description in the deed of trust corrected, prior to either of the advertisements or sales, and there is no specific prayer in the cross-bill for this to be done. The chancellor found that there was due, after allowing the various items, the sum of four hundred and thirty-six dollars and ten cents at the date of the decree, and appointed a commissioner to sell the property conveyed in the deed of trust unless the amounts were paid prior to the 1st day of July, 1921, and entered a decree accordingly. But he disallowed attorney's fees and trustee's fee for making the sales.

Appellant, being dissatisfied with the judgment, appeals, and assigns numerous assignments of error. It is first argued that the court should have caused the demurrer of the complainant to the cross-bill to extend back to the complainant's bill and dismiss this bill; and, second, that the court erred in disregarding the federal questions sought to be raised; and it erred in allowing the complainant to amend this bill so as to allege that the one hundred dollars paid for the property in the second sale was grossly inadequate; and that the court erred in decreeing that the sales made April 16, 1917, and April 12, 1920, were null and void, and in not decreeing that they were valid and legal; and that the court erred in decreeing that Welsh on April 12, 1920, legally tendered to Hesdorffer all that was due him, and in not allowing Hesdorffer any interest after April 12, 1920, to May 18, 1921; and that the court erred in not allowing publication fees, trustees' fees and attorney's fee to Hesdorffer, and in not allowing the cross-

complainant relief, and in not dismissing the complainant's bill.

The demurrer to the cross-bill was improperly sustained, but as the appellant secured in the decree all the relief that he was entitled to have under the cross-bill, and as the cross-bill was afterwards amended and the record shows that the case was set down for hearing on bill, answer, and cross-bill and answer to cross-bill, and testimony, the appellant was not prejudiced thereby. There was no error in refusing to extend the demurrer back to the complainant's bill, because the complainant's bill states a case, and it would not be demurrable even if the decision in the Braxton Case and the Maris Case were wrong, or if they had never been decided.

The alleged sale in 1917 did not sell the real property that the complainant owned. There was an error of description in the deed of trust, and there was twenty acres of land which there is no pretense that the complainant owned, at that time or at any time. The notice of sale did not carry the description in the original deed of trust above referred to, and there was no effort in the 1917 sale then to advertise and sell the real land that the complainant owned. At least there is a part of the land advertised and sold that the complainant did not own, and there was no separate bid for that portion of the land which he owned separated from that which he did not own. All the land and the personal property was sold as a lump sale; that is, sold as a unit.

We think in order to have made the proper sale under the error of description in drawing the deed of trust it would be necessary to have a reformation in the chancery court. We do not say this sale could not have been drawn under the deed of trust so as to pass the title under the trustee's deed, but the notice of sale and the trustee's deed make no mention of any error of description, nor does it advertise the real land which the complainant did own as to one of the subdivisions, and the sale was clearly void. After this trustee's sale it was readvertised in 1920, but

the advertisement does not call attention to the exact provisions of the deed of trust, but proceeds to describe the land, not in accordance with the terms of the deed of trust as to description, nor does it call attention to the mistake of the draftsman in drawing the deed of trust as to one part of the land. The proof amply supports the chancellor's view that the complainant offered prior to that sale to take up the indebtedness, and that he was prepared to do so, and shows clearly that Hesdorffer refused to accept the payment, claiming to be the owner of the property under the first sale, and refusing for that reason to entertain a proposition of payment, and not because the actual money was not tendered.

It is clearly manifest that if he had made the opposition on the ground that the money would have to be produced it would have been so produced. It would have been a vain and needless thing to have counted out the money in actual coin when Hesdorffer had absolutely refused to accept it. The bill offers to pay the money into court, and it was a sufficient tender under the circumstances of the case.

The chancellor was also well warranted in holding that this last sale was void because of gross inadequacy of consideration. The property had recently been sold for a consideration of twelve hundred dollars cash, and the attorney for the appellant testified that if the first sale was void one hundred dollars was a grossly inadequate price.

There is no merit in the contention that the cases relied on in the cross-bill constituted an adjudication of the questions presented under the statute referring to trustee's sales. The two statutes construed are entirely separate statutes, pertaining to different matters. There was no impairment of the obligation of the contract, nor is there any depriving of the cross-complainant of his property without due process of law.

The decision of the chancellor was manifestly correct, except in one particular, and that is that part of the decree which he gave the appellee until the 1st of July, 1921, in

which to pay the indebtedness. The court should have required the indebtedness to be promptly paid, but this is harmless error, for the reason that the appellant promptly appealed to this court, and is not prejudiced because he would not have received the money if actually paid to him.

The judgment of the court will therefore be affirmed.

*Affirmed.*