FEDERAL LAND BANK OF NEW ORLEANS *v.* ROBINSON *et al.*

(Division A. May 4, 1931.)

[134 So. 180. No. 28745.]

Wells, Jones, Wells & Lipscomb, of Jackson, for appellant.

Shands, Elmore & Causey, of Cleveland, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant, the Federal Land Bank, filed its declaration against the appellees, Rosalie Robinson and her husband, seeking to recover the balance due on their note, the principal of which was twenty-five thousand dollars. The appellees in the court below filed several pleas of recoupment, the nature of which will more fully appear in the statement of facts. The case was submitted to a jury, and a verdict returned for the appellees, and judgment was rendered accordingly; from which judgment an appeal is prosecuted here.

On April 1, 1926, Mrs. Rosalie Robinson and her husband, J. T. Robinson, executed and delivered a note, of that date, for twenty-five thousand dollars, and to secure the note executed a deed of trust on her plantation, consisting of about nine hundred sixty-two acres of land situated in the Delta in Bolivar county. The note was an amortization note, payments to be made in thirty-five annual installments, due on the 1st day of November of each year after the date of its execution. The first installment of eight hundred eleven dollars and forty-six cents fell due on the 1st day of November, 1926. The appellees never paid the first installment or any other.

Being authorized so to do by the terms of the deed of trust, the executive committee of the bank on January 27, 1927, passed a resolution declaring the entire indebtedness due and payable, and directed the president of the bank to employ counsel to immediately foreclose the deed of trust; and on that day the president of the bank directed its general attorney to secure counsel and fore-

close the deed of trust; whereupon the general attorney wrote to T. W. Scott, an attorney at Greenwood, Mississippi, who was also a trustee named in the deed of trust, directing him to foreclose the deed of trust, and inclosing therein the note, the deed of trust, the resolution of the executive committee, and a statement of the balance due as of March 1, 1927. The letter directed Mr. Scott first to attempt to secure the payment of the past-due installment, and thus avoid advertising the plantation for sale.

Scott replied to this letter, accepting the duty imposed upon him by the bank; and there was much correspondence, in which the bank, by its general attorney, insisted upon the foreclosure of the trust deed in default of payment. There was correspondence on the part of Scott, urging that the land could be sold, provided there was a foreclosure for the past-due installment only, rather than for the whole indebtedness, as he had been instructed. On April 25th Scott wrote to the general attorney, inclosing a notice of trustee's sale, in which it was stated that the foreclosure was to be on a past-due installment; and that the purchaser would be required to assume the balance of the Robinson indebtedness.

The bank, through its attorney, and with the knowledge of its managing officers, assented to this method of sale for the single installment; but the executive committee thereof did not enter any formal resolution on its minutes, rescinding its previous action, declaring the entire indebtedness due, and directing the foreclosure for said indebtedness. In fact, the general attorney wrote to Scott that it would be the pleasure of the bank to have the foreclosure for the installment, and advised him that such proceeding would be legal under the terms of the trust deed. The deed of trust specifically invested the Federal Land Bank with the power to declare the whole debt due upon the default in any one or more of the installments; and also provides that any assignee of an installment, by making request of the bank and the trus-

tee, may have a foreclosure for only one past-due and unpaid installment.

On May 2d, not having foreclosed under the first notice sent to the bank, Scott, trustee and attorney, sent the general attorney another notice with the same provisions as at first, in which the land was to be offered for sale on May 30, 1927. The assistant to the general attorney, Mr. Steiner, wrote Scott, acknowledging receipt of the notice, and directing him to proceed, except that he was not to sell any lands which were affected by the flood of the Mississippi river.

On the day the sale was advertised Scott drove by Pace, Mississippi, and saw Robinson, the husband, whom he requested to accompany him to Rosedale, where the sale was to be conducted. Robinson did not comply with this request, and Scott, the trustee, was accompanied by a young man; the sale was conducted, but there were no bidders or people interested in the land. Scott, the trustee, had the young man bid in the land for, and on behalf of, himself, Scott the individual; the amount of his bid not being certain, but including the amount of the past-due installment, together with the costs and interest. No written memorandum of this sale was made; Scott, trustee, never executed to Scott, the individual, any deed. It is contended by Robinson that en route home from Rosedale, the place of the sale, Scott told him of the sale, and of his purchase, and that he had purchased in his own name, in order that he might find a purchaser who would take over the land and assume the indebtedness. Robinson, according to his testimony, assented to this, and told Scott that he would be glad to help him find a purchaser.

Scott finally reported his action to the Federal Land Bank, and there is much correspondence in the record, to the effect that Scott wanted to hold the matter open without executing a deed to himself until he found a purchaser, and then make the deed direct to the pur-

chaser. The bank, through its general attorney, assented to this, but insisted that Scott make the deed to himself, and take over the land, and assume the indebtedness in accordance with the terms of sale heretofore mentioned.

Scott was unable to find a purchaser, declined to make the deed to himself and assume the indebtedness, and, after much persuasion by correspondence, finally readvertised the land for sale; the foreclosure being for the entire indebtedness. The publication of the notice of the second sale was in the Rosedale newspaper. According to the testimony in the case, neither the bank nor Scott ever communicated to Robinson these facts, or ever notified the latter of their purpose to abandon the first sale for one of the installments, and readvertise the land for sale for the payment of the entire indebtedness.

It is not contended that any notice of this change other than the notice of sale by the trustee in the newspaper was ever given to Mr. and Mrs. Robinson; and the testimony is undisputed that the Robinsons never had any notice of the change of plan of sale until it came to their attention in August, 1929, when attorneys presented the note and demanded payment of the balance due.

On October 3, 1927, pursuant to the second notice, the land was sold by Scott, trustee, according to law and the terms of the notice of sale, for the entire indebtedness, at which sale the Federal Land Bank became the purchaser for five thousand dollars, and, in pursuance of said bid, the deed was executed by Scott to the Federal Land Bank, and the amount of the bid, less the expenses, was credited to the note.

It is a fact that, from the date on which the amount of the loan was advanced, to the present time, the Robinsons have never paid any sum whatever to the Federal Land Bank. The Robinsons, of course, never had any notice as to what the minutes of the executive committee of the bank contained, subsequent to the notice sent on the day the entire indebtedness was declared due by the executive committee.

Thereafter, in January, 1929, the Federal Land Bank sold the land, and conveyed same by deed, for a consideration of twenty-six thousand dollars, eleven thousand dollars being in cash, and fifteen thousand dollars evidenced by a note secured by a deed of trust on the land. In August of the same year, Somerville & Somerville, attorneys with whom the note had been placed for collection, proposed to the Robinsons that the bank would make a deed to any purchaser they could secure, and, after deducting the indebtedness to itself, plus the expenses of sale and the attorneys' fee of Somerville & Somerville for its collection, that Robinson and wife should have the balance realized from such sale, and the bank would surrender to them their note. The court excluded this evidence of their offer of settlement.

There is much evidence in this record of the value of the land, the bank undertaking to show that through its representatives it had made every effort to sell the land, through Scott, trustee, through Robertshaw, through real estate agents; and never had a substantial offer therefor from the time they began the foreclosure proceedings until they made the sale in 1929. In effect, their testimony tended to show that the above-mentioned sale for twenty-six thousand dollars, part of which was on credit, was the best substantial offer they had ever had.

On behalf of the appellees, there is much evidence tending to show that these lands, at the date of the second sale on October 3, 1927, at the market prices then prevailing in the neighborhood, were worth from thirty-five thousand dollars to sixty thousand dollars, in the opinion of witnesses. The pleas in recoupment virtually set up these facts, and alleged that, because of the proceedings by the bank to foreclose for a single installment, by which the purchaser would become primarily obligated to pay the balance of the indebtedness, together with the installment past due, and thereafter, without notice to them, departed from this plan of which they had been given notice, and to which they had agreed, the second sale was

a fraudulent sale, and that the price at which the land was sold, five thousand dollars, was inadequate; that, by changing the terms of sale without notice to them, the Robinsons were damaged to the extent of the value of the land, diminished by the amount of the Federal Land Bank's payment therefor, to-wit, five thousand dollars.

In its replications and in its evidence, the bank showed by Scott that one of the reasons for not selling according to the resolution of the executive committee was that Robinson, the mortgagor, had agreed to buy in the land, in order to be rid of certain junior incumbrances or liens. This was flatly denied by Robinson, and, as a matter of fact, the record shows that Scott never advised the bank of this agreement with Robinson until after the first sale for the single installment, past due, had been concluded.

The issues of the fair market value, and of whether there had been any notice to Robinson of the second sale, in accordance with the pleas of recoupment, were submitted to the jury on instructions entirely too lengthy to be copied here.

On this appeal, the appellant's case is bottomed upon the theory that the sale of May 30th for the single past-due installment was void, and had no effect upon the appellees' rights for that reason; and that the sale in October for the entire indebtedness, in accordance with the terms of the trust deed, was valid and binding; and that, having at that time given notice by the action of the executive committee, as shown by its minutes, in January, 1926, of its determination to foreclose for the entire indebtedness, the sale for the single installment was avoided, and in nowise affected the rights of the appellees.

Appellant says that the May sale was void for the following reasons: First, the executive committee of the board of directors of the bank had ordered a foreclosure for the entire indebtedness, and, having declared same

due, and never having rescinded the action, all the acts of the attorney and officers of the bank not formally approved by the executive committee rendered the first sale abortive and void; second, that Scott, trustee, had no authority to advertise and offer for sale the lands for the past-due installment, the other thirty-four installments, or balance due, to be assumed by the purchaser in the absence of the consent of the junior incumbrancers; third, the public sale under the trust deed by Scott, trustee, to Scott as an individual was absolutely void; fourth, that Scott, the individual, the purchaser, never paid to Scott, trustee, any money or other thing of value on his bid, and was not financially able to do so, therefore the sale was a nullity; fifth, that Scott, the trustee, never executed any deed to Scott, the individual, and therefore the sale was not binding on the appellant; sixth, that Scott, the trustee, never made any written memorandum of sale to himself of date May 30, 1927, and that this omission rendered the sale void under the statute of frauds; seventh, that the facts show that Scott, trustee, never intended personally to buy the land, but simply undertook to hold the sale in order that he might sell to some one else—therefore, no sale of any character was consummated.

First, we deem it unnecessary for us to explore with counsel the various fields which we have set forth, for the reason that we have reached the conclusion under the facts of the case that it is immaterial whether the sale of May 30th was absolutely void, as contended by appellant, or only voidable, as contended by appellees. There often arises confusion when courts, at the end of litigation, finally decide the controversy between the litigants, and declare certain transactions void for various reasons. But we deem it unnecessary now for us to stop here, to point out the vast difference between a transaction which is void ab initio and one which may be avoided by the court at the instance of the injured party.

The facts, as found by the jury, are that the Federal Land Bank, after declaring on its minutes that it would foreclose for its entire indebtedness, at the instance of its attorney and trustee, acquiesced in changing that plan, and consented that the sale be made for a single installment. This change in plan was highly beneficial to the mortgagor, since, if and when such sale for a single installment was effectuated, the indebtedness was assumed by a third party, agreeable to, and accepted by, the mortgagee; and the mortgagor is no longer liable primarily for the debt. From that time forward it was as though he was an indorser on his own note, rather than the principal; and in this case we have Scott, the purchaser, notifying Robinson, the mortgagor, the Federal Land Bank, the mortgagee, and all parties agreeing that this method of sale was satisfactory to, and approved by, each and all of them.

After months of correspondence, this plan failed, and then, without any notice, and without any further default on the part of the mortgagor, the purchaser and the mortgagee agreed to set aside their action, which vitally affected the rights of the mortgagor. The latter had a right to believe that his debt had been arranged, and that his primary obligation had ceased.

It is idle to say that the notice of sale published in the newspaper was any kind of notice to the mortgagor, unless by evidence the fact of that publication is brought home to him. It is not contended that there was any other notice. Under these facts, the mortgagor was denied the privilege of attending the second sale and protecting his interests. Nothing is disclosed in this record which brought home to him any knowledge that the first sale had been avoided, the sale which all the parties thereto had theretofore ratified, and no third parties' rights are involved here, for there are no other parties to the litigation.

Both the mortgagee and the trustee, as their correspondence shows, ratified the sale so far as the mort-

gagors were concerned, experimented with it for months to see whether or not another purchaser might be induced to take over the land; and, failing to secure a purchaser, without notice to the mortgagors, proceeded to sell the land under the former resolution, for the entire indebtedness, prior to any other default, and without any other action on the part of the bank.

There is no force in the argument that the bank had no power to advertise and sell for a single installment, because the deed of trust did not, in terms, so stipulate. There is nothing in the language of the deed of trust which can be construed as a prohibition against that form of sale. The general rule is that, in the absence of a prohibition, the mortgagee may proceed to foreclose for a past-due note or installment. See Bridges v. Ballard, 62 Miss. 237; Magruder v. Eggleston, 41 Miss. 284; 41 C. J., p. 856, par. 1044.

There is no merit in the contention that, because the executive committee did not place upon its minutes the resolution authorizing Scott to sell for the past-due installment the sale was void. The mortgagor had no opportunity to inspect or control the minutes of the executive commtitee; but these officers of the bank had apparent authority to have the sale advertised and conducted as was done on May 30th; and the mortgagor had a right to rely upon this apparent authority exercised by the attorney with the knowledge of the bank. Strong evidence of this is the fact that, after the first sale, and before the second, the bank remitted to Scott the cost of publication of the first advertisement, and paid therefor.

The evidence in this case shows that at the time of the second sale five thousand dollars was wholly inadequate as a price for the land. No actual fraud was committed by the bank and its officers in this transaction; but the whole proceeding was, in effect, a legal fraud upon the rights of the mortgagor, since he was advised that his debt had been adjusted, and then, without notice, by proceedings of which he was unaware, the mortgagee

changed his liability for some twenty thousand dollars in a material manner, and substantially altered the situation without notice to him. He was denied the right or privilege of attending the second sale and protecting his interest; and he had this right after Scott, the trustee, told him of his bid, to which he (the mortgagor) assented, as did the Federal Land Bank. See Caldwell v. Kimbrough, 91 Miss. 877, 45 So. 7.

Second. The court properly excluded the evidence of an offer of compromise for the very obvious reason, among others, that the offer imposed attorneys' fees large in amount upon the Robinsons, and did not have the effect of restoring the situation as it existed on the date of the second sale.

Third. The appellant insists that it is entitled to a reversal of this case, because the court refused the following instruction, No. 12:

"The court instructs the jury for the plaintiff, that irrespective of all other issues in this case, that the amount actually lost by the plaintiff of the money advanced and loaned to or for account of the defendants under the deed of trust from defendants to plaintiff, was the sum of six thousand five hundred dollars; and if the jury believe from the evidence in this case that the Federal Land Bank sold said land to P. H. Brooks for its full, fair market value, even if the jury should find that on the plea of recoupment, plaintiff is not entitled to recover under the evidence in this case and the instructions of the court, the full amount sued for by plaintiff, nevertheless the jury must find for the plaintiff in the sum of six thousand five hundred dollars, together with interest from January 15, 1929, until paid at the rate of six per cent per annum, together with a reasonable attorney's fee for collecting said amount."

This instruction was properly refused, for the reason that the issue of the fair market value of the land was fixed as of October 3, 1927, the date of the second sale and the date when the defendants' cause of action for

damages accrued. The lands were sold to Brooks in January, 1929. There was evidence in the record that the market value of the lands had become lower between these dates, and that the houses and lands had deteriorated. This important element was omitted from the instruction. Also, while it is true that a witness for the bank testified that it would be out six thousand five hundred dollars, yet an instruction given by the court for the plaintiff would contradict the accuracy of this general statement.

Instruction No. 2, for the plaintiff, told the jury that the net amount due the plaintiff on that date, including the bid of five thousand dollars, was twenty-nine thousand five hundred forty-six dollars and twelve cents. Then if the amount, twenty-six thousand dollars, paid by Brooks finally for the land, be deducted from twenty-nine thousand five hundred forty-six dollars and twelve cents, there would then be due the sum three thousand five hundred forty-six dollars and twelve cents instead of six thousand five hundred dollars; and this sum includes interest from the date of the second sale.

We think it is not seriously denied that recoupment was the proper plea in this case. Neither can it be doubted that the injured mortgagor who has been damaged by a fraudulent sale for an inadequate price, without notice thereof, may either file his bill in equity to set aside the sale or sue at law for the damages sustained by him; or, if sued, he may, by way of recoupment, diminish his debt; or, if the damages sustained by him are equal to or exceed the amount of the debt, he may extinguish same. See Myers v. Estell, 47 Miss. 4; Rogers v. Barnes, 169 Mass. 179, 47 N. E. 602, 38 L. R. A. 145; Burnett v. Dunn Commission & Supply Co., 180 N. C. 117, 104 S. E. 137; Dwyer v. Rohan, 99 Mo. App. 120, 73 S. W. 384; Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S. W. 1006; O'Brien v. Logan, 236 Mass. 507, 128 N. E. 878.

Affirmed.