WHEELER *v.* CLEVELAND STATE BANK.

(Division A. Dec. 2, 1935.)

[164 So. 400. No. 31737.]

**J. C. Feduccia** and **W. B. Alexander, Jr.**, both of Cleveland, for appellant.

Shands, Elmore, Hallam & Causey, of Cleveland, for appellee.

546

**McGowen, J.,** delivered the opinion of the court.

The appellee, Cleveland State Bank, on March 1, 1934, brought suit against F. H. Wheeler and wife to recover the principal sum of a note for twenty thousand dollars with interest and ten per cent attorney's fees as provided therein. Process was issued returnable to the April term of the circuit court. At the return term, F. H. Wheeler filed a plea of the general issue, and Mrs. Wheeler filed a plea pending proceedings in bankruptcy, and at a subsequent term Mrs. Wheeler pleaded a discharge in bankruptcy and the suit was dismissed as to her. At a later term of the court, Wheeler made a motion to transfer the cause from the circuit to the chancery court, stating, as the reasons therefor, that his defense could not be adequately presented in a court of law due to the fact that subsequent to the institution of this suit real and personal property had been sold under a mortgage, securing the note sued on, by foreclosure proceedings at a time

when a world-wide depression existed, and for a wholly inadequate price and in an unlawful manner. The motion charged that the sale was not conducted by the trustee named in the deed of trust, but was conducted by A. W. Shands, now deceased, who cried off the sale for C. J. Craggs, the trustee named in the deed of trust; that A. W. Shands was a stockholder and attorney for the bank; and that it was to his financial interest that the property be sold for a low price. The court overruled this motion. Wheeler withdrew his plea of the general issue and then filed a plea of recoupment, setting up that he was entitled to a credit for the difference between the fair market value of the land and personal property and the amount it actually brought at the trustee's sale, for the reason that same had been sold by Shands, not the trustee, at a grossly inadequate price.

The special plea was amended by Wheeler by adding the allegation that the sale under the deed of trust was void because the note securing it had been extended and a new note and deed of trust securing same had been executed by Wheeler and his wife.

After hearing the evidence, the court below granted a peremptory instruction on behalf of the bank; the jury returned a verdict, on its behalf, for twenty-one thousand five hundred sixty-eight dollars and twenty-four cents, and judgment was entered accordingly, from which this appeal is prosecuted.

The evidence in the trial of the case is substantially as follows: At the time this suit was brought, and for some time prior thereto, Wheeler and his wife had executed a deed of trust on six hundred forty acres of land and personal property thereon, as security for approximately twenty-seven thousand dollars including interest and taxes, and Wheeler owed the bank the principal sum of the note for some years, it having been renewed from year to year, the maturity date being November 1st each year.

Some time prior to the Christmas Holidays of 1933, Wheeler asked Brown, the president of the bank, to take charge of the property, and Wheeler moved away. The bank put a man in charge of the property, and on March 24, 1934, the real property was sold, at public auction, for three thousand dollars, and C. J. Craggs, the trustee named in the deed of trust, executed a deed to the bank. As he could not be present at the sale, he requested Shands to cry it off for him, and the bank was the highest and best bidder at the sale, consequently it was sold to the bank. There is no allegation in the evidence tending to show any irregularity in the advertisement, the manner of crying off the land, or in any of the proceedings, except the fact that A. W. Shands, as auctioneer, had not sold the real estate and personal property at the same time and place. By written agreement with Wheeler and his wife, Craggs, the trustee, personally, sold on a subsequent day the personal property at the barn on the plantation for two thousand dollars, the bank being the purchaser thereof. Appellant now insists, however, that the personal property should have been sold with the land, because it was necessary in the operation of the plantation, and that the joint sale of real and personal property would have been to his advantage. If the sale of the personal property was void because it was sold separate and apart from the realty, Wheeler and his wife specifically did not waive it, but reserved that point generally in the written waiver signed by them.

There was evidence tending to show that the real property was sold for a fair price, in consideration of the fact that the Cleveland State Bank bid it in subordinate to the right of the first mortgagee, the Prudential Life Insurance Company. There was also evidence tending to show that the sale of the personal property brought a fair price.

On the other hand, there were a number of witnesses who testified that the fair market value of the land was forty-eight thousand dollars; that the greater portion of

it was in cultivation; that it was alluvial land, and that one-half of it was tile drained; and that the houses thereon were in good repair, which latter fact was in dispute.

F. H. Wheeler and wife testified that before they removed from the plantation Brown, the president of the bank, agreed to renew the note for another year; that this agreement occurred in the fall of 1933; that they went to the bank and signed a note and deed of trust in blank, with the understanding that all the blanks would be filled out by Brown, and that a notary public in the employ of the bank would write up the acknowledgment thereon, and the bank agreed to deliver the old papers to the appellant. The bank retained both the old and the new papers, and the blank deed of trust and note signed by Wheeler and his wife were not introduced in evidence. A short time after the signing of this blank note and deed of trust, Wheeler desired the bank to waive its lien in favor of some one who would furnish him money with which to make a crop for the ensuing year. The president of the bank declined to execute this waiver, and, thereupon, Wheeler abandoned the plantation. The evidence on the motion to transfer the cause was practically the same as that offered on the trial of the cause on its merits.

We have stated an outline of the facts, and other material parts of the evidence will be referred to in the opinion.

(1) We could not reverse the cause because the circuit judge declined to transfer it to the chancery court. The original action on the note was distinctly a proceeding at law. See section 147, Constitution 1890.

The defense upon the ground of fraud in the sale and inadequacy of price was available to and exercised by the appellant, the defense here being that the appellant was entitled to have a credit on the note by way of recoupment to the extent of the difference between what the property sold for and the fair value thereof. See

Fed. Land Bank v. Robinson, 160 Miss. 546, 134 So. 180. No accounting was necessary in the case at bar, as all the credits applied by the bank to the note were sworn to be correct, save and except the recoupment claimed.

(2) The sale was not voidable because the trustee, Craggs, employed the services of A. W. Shands, attorney for the bank, to act as auctioneer in the sale of the real property. No irregularity, other than as above stated, is alleged in the record. This question has long been at rest in this state. Personal attendance of the trustee at the sale was not necessary. In Dunton et al. v. Sharpe, 70 Miss. 850, 12 So. 800, this court so held. In the case at bar the trustee, through his deed executed in favor of the bank, sanctioned and approved the sale.

(3) As to the special plea that the personal property should have been sold at the time and along with the real property because the mules and farming implements, etc., constituted part of the "set up" of the operation of the plantation, it is without merit. The deed of trust in this case vested the trustee with discretion to sell the personal property at public or private sale anywhere in the town of Cleveland. The appellant agreed in writing that the trustee might sell the personal property at the barn on the plantation involved. No inference of fraud can be had from the action of the trustee in so selling the personal property.

(4) Much reference is made to the sale of the property during the depression, and to the Moratorium Law, chapter 247, Laws 1934. There is no merit in this contention. This suit at law was instituted and this foreclosure was had, prior to the passage of said law, and, in view of the fact that, before Christmas, Wheeler abandoned the plantation and called upon the bank to take over the property, he would not have been entitled to any consideration for an extension, when he was no longer undertaking to discharge the obligation represented by the note sued on. The spirit and purpose of the act was to

throw a mantle around struggling debtors undertaking to pay, and who were being deprived of their property by foreclosure proceedings.

(5) It may be the contention of the appellant that, because the land was sold at public auction for three thousand dollars, the price was so grossly inadequate as to furnish evidence of fraud. At the time this sale was conducted, there was a prior mortgage to that being foreclosed by the bank amounting to more than twenty-six thousand dollars. There was due to the appellee bank a sum in excess of twenty-five thousand dollars. The appellant abandoned his plantation because the bank would not furnish him enough money, or waive its lien for that purpose, with which to operate it during 1934, although he made no effort to provide his own funds. He deserted the plantation and perishable live stock before Christmas, and thereby threw upon the bank the responsibility of preserving its own security, which duty primarily rested upon the shoulders of the mortgagor. In that situation, the bank was compelled to sell the property in order to preserve its estate. It is a matter of common knowledge that delta lands which are not cultivated deteriorate rapidly in value. Wheeler was not willing to take the risk of operating the plantation, although he could borrow the money from his mother. It is a well-known fact that the business of a bank is not farming, so that this plantation, if preserved, must have been operated by the bank through paid employees.

We think the circuit judge correctly held, under the facts in this case, that the price bid was not so grossly inadequate as to impute fraud by the trustee and the bidder. There is no room here to apply the doctrine of fraud because of a gross inadequacy of price. Federal Credit Co. v. Boleware, 163 Miss. 830, 142 So. 1. The appellant did not personally attend the sale, and admitted on the witness stand that he did not know of a single individual in the world who would pay more than the bank

has applied as a credit. As an illustration, see Wilkinson v. Wilson, 154 Miss. 726, 123 So. 847.

And, in addition, we might add that the chancery court was wide open to the appellant to proceed by injunction, if he had any idea that he was entitled to any relief in this case. He surrendered and abandoned the property and his debt, and left the creditor in the situation we have described.

(6) After many months, and after signing an agreement that the deed of trust might be proceeded with by a sale of the personal property at the barn, the appellant filed an attempt at a plea in abatement along with, and as a part of his pleas on the merits, but no point is made as to mispleading. In brief, the plea was that the note and deed of trust securing same had been renewed, and was not due when suit was brought.

As stated, the evidence shows that a short time before Christmas, and before the abandonment of the property by Wheeler, he and the president of the bank had agreed that his debt might be renewed; that-Wheeler and his wife went to the bank and signed a note and deed of trust in blank, with the agreement that these blanks were to be filled in by the president of the bank. They were never filed in, and the 1932 deed of trust, which was foreclosed here, was never returned. Wheeler testified that it was specifically agreed and understood that the blank deed of trust was to be filled in by Brown, and then acknowledged by Wheeler. The effect of Wheeler's testimony, however, is that he and his wife were in the habit of signing any papers requested by the bank. Brown, the president of the bank, testified that the papers were never executed.

It is needless for us to say that the record does not disclose for how long a time this renewal was to be granted, nor any rate of interest, nor the terms of the contract, except the above statement that it was to be a renewal. This contract was never renewed, and hence the

deed of trust and note securing it were never extended, because Brown did not fill in the blanks, and Wheeler 'and his wife did not acknowledge the deed of trust before a notary public. The execution of the deed of trust by acknowledgment was a necessary part—an invaluable part—of the alleged contract of renewal, and Wheeler and his wife could have had, and did have, an option, under all of this evidence, to refuse to execute the acknowledgment, or to object to any of the terms, had Brown filled in the blanks. In addition, the written agreement executed by Wheeler and his wife, as to the sale of the personal property, is clear evidence that neither Brown, the president of the bank, nor Wheeler had in contemplation that the 1932 note and deed of trust had been renewed or extended, and this is intensified by the abandonment by Wheeler of the plantation, and his calling upon the bank to take charge of and preserve the property. The renewal, therefore, was never accomplished.

In some manner, on these facts, it is asserted by the appellant that the proviso of section 5, chapter 247, Laws 1934, should be invoked for his relief in this case. This proviso is as follows: ''Provided, further, that prior to May 1, 1936, no action shall be maintained in this state for a deficiency judgment until the period of time extension allowed in any proceeding begun under the provisions of this act shall have expired.'' A reading of that entire section convinces us that if a proper case was presented, the chancery court only is vested with the power to grant extensions, and its jurisdiction has not been invoked for that purpose by the appellant. See Rea v. O'Bannon, 171 Miss. 824, 158 So. 916.

We find no reversible error and the judgment is affirmed.

Affirmed.