217 So.2d 31 (1968)
Anderson MYLES and Armella Myles, Appellants/Complainants,
v.
Homer L. COX, Otha Mabry, Substitute Trustee, and Nelson Cauthen, Defendants/Appellees.
No. 45109.
Supreme Court of Mississippi.
December 23, 1968.
McClendon & McClendon, Jackson, for appellants.
Nelson Cauthen, Canton, Crisler, Crisler & Nichols, Jackson, for appellees.
*32 PATTERSON, Justice:
This is an appeal from the Chancery Court of Madison County wherein appellants, Anderson Myles and Armella Myles, filed a bill of complaint against appellees, Homer L. Cox, Otha Mabry, and Nelson Cauthen. They sought confirmation of their title in some eight and one-half acres of land; to remove cloud to their title by cancellation of a substitute trustee's deed; to obtain an accounting of the amount they owed on a promissory note originally secured by a deed of trust; to determine what parties were entitled to receive these amounts; and for a reasonable time in which to pay such money to the appropriate parties. After hearing, the chancellor entered a final decree dismissing the appellants' bill of complaint, adjudging that Homer L. Cox was the lawful owner of the property in question, ordering the appellants to surrender possession of such property, and granting their prayer for appeal to this Court.
In 1964 Anderson Myles owed debts of a substantial nature to Forrest Drilling Co., Termplan, Inc., and to Jackson Investment Co. These debts were secured by deeds of trust and legal proceedings had been filed to foreclose these deeds of trust in order to collect these debts. In an attempt to prevent the sale of his property, Myles contacted Nelson Cauthen, an attorney, on August 10, 1964. Attorney Cauthen had previously been employed by other members of the appellants' family and had represented the appellants personally on various occasions since 1950. Myles paid Cauthen $164 and asked that he proceed in his behalf. Myles testified that on September 10, 1964, when he returned to his attorney's office, that the suggestion was made to him that "* * * he would pay all of my bills  consolidate all my bills in one note, and I would pay him $50 per month."
An arrangement was worked out so that Cauthen was to advance appellants the amount necessary to pay their debts. In return they executed a promissory note for the amount of the debts plus an attorney's fee of $300. This note was secured by a deed of trust on eight and one-half acres of their land and on their home. Repayment was set at $50 per month until the entire balance of $3,145 plus six percent interest per annum was paid. Cauthen testified that since it was impossible to determine the exact amount necessary to pay off appellants' debts, they agreed that any reductions or discounts obtained in the payment of these debts would likewise reduce the amount of the promissory note. However, Myles stated that he understood the $164 advanced by him to his attorney was to serve as the first three monthly payments and that any reductions in the amounts originally owed by appellants would likewise be credited as monthly payments.
After the note and deed of trust were executed, Cauthen settled the various debts of the appellants and in doing so expended approximately $2,800. It appears that he gave the appellants credit for the $164 advanced. On November 11, 1964, Cauthen wrote the Myleses indicating that they should begin making regular payments to extinguish the debt. Mrs. Myles answered this letter by return mail on November 16, 1964, stating that her husband would come by to see about the matter the following Saturday. Cauthen denied that Myles ever came by his office. Myles testified, however, that he did visit his attorney, but only talked with him briefly since he was busy with another client. He further stated that he had expressed his belief that the $164 and the reductions in debts would serve as monthly payments, and further that Mr. Cauthen agreed to this arrangement. His attorney specifically denied such an agreement. Monthly payments were thereafter made in June, July, August, and November, 1965.
Appellant testified that he did not see or hear from his attorney again until April 28, 1966. Cauthen on the other hand testified that he sent periodic notices to his client requesting monthly payments on the *33 note. On April 28, 1966, Cauthen wrote Myles stating that nineteen payments should have been made as of that date and only four had been tendered. In view of this fact he would find it necessary to foreclose unless a payment of $500 was made immediately. On May 3, 1966, Myles wrote Cauthen to the effect that he would like to bring his debt current and would pay $50 a week thereafter in order to do so. A $50 check was enclosed with this letter. On May 27, 1966, Cauthen returned this payment and advised that since the requested $500 had not been paid, foreclosure proceedings would be instituted. Myles denied that the letter introduced by Cauthen was the letter that he received, but admitted that he did receive a similar letter. Myles then testified that in response he wrote Cauthen requesting an accounting of the amount he owed and that he would pay such amount on July 1, 1966. Cauthen disavowed having received such a letter.
Thereafter preparations were made for a foreclosure sale on June 27, 1966. Publication was made in the local paper as required by law and a proper notice thereof was attached in the appropriate place at the county courthouse. A substitute trustee was necessary since the original trustee had died. Cauthen arranged this substitution. Cauthen testified that Mrs. Myles visited his office at about that time and requested the date on which the sale was to be held. He answered such request by telling her to get a newspaper and find out. Cauthen admitted that he got in touch with Mr. Cox, appellee, a friend and land buyer, to inform him of the sale and the amount owed on the debt. The sale was held as scheduled and Cox bought the property for $3,218, the amount of the debt. The Myleses did not attend the sale.
Thereafter, in August 1966 appellants filed their bill of complaint. They alleged, among other things, that the sale price was grossly inadequate and that this inadequacy when considered with other circumstances surrounding the sale was sufficient to set the foreclosure sale aside; that because of the fiduciary relationship existing between the complainants and the defendant Cauthen, they should have been entitled to an accounting prior to the foreclosure sale and were entitled to a reasonable time within which to pay any sum which might have been in arrears.
The case was tried and the chancellor made the following finding of fact: That only four monthly payments were made by Anderson Myles; that when Cauthen notified Myles that he intended to foreclose, he gave the balance due as $3,136.13; that testimony had placed the value of the property in question from a high of $16,000 to a low of $3,400. The court found the value of the property to be between $6,500 and $8,000; that although the sale price of $3,218 was low, it was not so inadequate "* * * as to shock the conscience of the court." The court was of the further opinion that the inequitable circumstances complained of were not sufficient to set aside the foreclosure sale as there was no evidence that prospective bidders had actually been deterred from bidding on the property, and there was no misapprehension or mistake on the part of anyone. The court further found the trustee did not abuse his discretion in selling the property as a whole rather than in parcels; that proper notice of sale was given by the appellee; that the sale was not made on credit, but was in fact for cash, $1,000 at the time of sale and the balance the next day.
The decree of the chancellor dismissed appellants' bill of complaint, declared Homer Cox to be the rightful owner of the property, and granted complainants' prayer for appeal to the Supreme Court.
The appellants assign the following as error:
1. That there was no declaration by the lower court that the foreclosure sale was void because the procedure followed was legally insufficient.
*34 2. The foreclosure sale should have been declared void because of inadequate consideration coupled with inequitable circumstances.
3. The finding of fact that the property was worth only $6,500 to $8,000 rather than not less than $14,000 and that the sale price of $3,218 was not so inadequate as to shock the conscience of the court.
In considering the first assignment of error we do not detail each of the irregularities in the procedure leading to the sale. We have, however, examined each of the irregularities complained of and find no reversible error therein.
The second assignment of error as to inadequate consideration and inequitable circumstances, when linked together, being sufficient to set the sale aside, is not well taken, in our opinion, for the reason that the inequitable circumstances, if any, grew out of a conflict of testimony between Cauthen and the Myleses, somewhat detailed above, which was resolved against the appellants. This conflict was resolved by a statement of the court that there was no mistake or misapprehension on the part of anyone, meaning, of course, Cauthen on the one hand and Anderson Myles and his wife on the other. We note additionally that Cox, one of the defendants and the purchaser of the land, was in no way connected to the incidents complained of by the Myleses and directed to Cauthen. The evidence does not reflect that Cox was a client of Cauthen or that they were more than friends and business acquaintances.
If a trustee's sale is to be set aside, the evidence must show a failure by the trustee to perform a necessary condition precedent to the valid exercise of his power of sale or there must exist an inadequate consideration plus inequitable circumstances as would void the sale since the sale imparts a presumption of validity. Jones v. Frank, 123 Miss. 280, 85 So. 310 (1920). In either event the burden of proof was upon the appellants. The chancellor found from the evidence that there were no inequitable circumstances. After a thorough examination of the entire record we cannot say that he was manifestly wrong in this finding. We conclude that this assignment of error is not well taken.
The third assignment of error goes to the heart of the suit and has given the Court, and particularly the writer of this opinion, much concern. From the sale figures on the face of the record the impression is thrust upon the reader that the appellants were deprived of their property upon which their home was located for a grossly inadequate sum, and this unjust situation could be remedied by another sale. However, when the consideration is adjudged in the shadow of the prior decisions of this Court, we cannot state that the chancellor erred as a matter of law in finding that the consideration was so inadequate as to shock the conscience of the court. Conceding that "the conscience of the Court" is an indefinite standard by which a determination can be made to ascertain the precise point at which an inadequate consideration becomes so grossly inadequate as to require a trustee's sale to be set aside and conceding that we know of no definitive standard to gauge the situation, we turn, as we must, to our prior decisions for guidance in resolving what figures have shocked the Court's conscience in the past and what have not.
The chancellor found the property to have a reasonable market value of between $6,500 and $8,000. There was evidence that the property was worth as much as $16,000. There was also evidence that the property was not worth more than $3,400. The evidence was in conflict with regard to its value, and though we might have found a different value had we been the trier of facts, we cannot say that the chancellor was manifestly wrong in arriving at a valuation of between $6,500 and $8,000. We accept these figures for the basis of the opinion.
*35 In Home Owners Loan Corp. v. Wiggins, 188 Miss. 750, 758, 195 So. 339, 341 (1940) this Court reaffirmed the inadequacy of consideration rule in these words:
Mere inadequacy of price alone does not render a foreclosure sale fraudulent, even in a court of equity, unless the bid is so low as to shock the conscience of the court.
Authorities cited therein are: Newman v. Meek, Freem.Ch. 441; Fischer v. Spierling, 93 N.J.L. 167, 107 A. 420; Weyburn v. Watkins, 90 Miss. 728, 44 So. 145; Federal Credit Co. v. Boleware, 163 Miss. 830, 142 So. 1; Wheeler v. Cleveland State Bank, 174 Miss. 542, 164 So. 400; Hardin v. Grenada Bank, 182 Miss. 689, 180 So. 805. In Hardin v. Grenada Bank, 182 Miss. 689, 714, 180 So. 805, 812 (1938) this Court refused to set aside a foreclosure when the inadequacy was in greater proportion than here. We stated:
* * * The last question presented in this case by the appellants is that the foreclosure sale should be set aside because $1,200, the price paid by Woodruff, was wholly inadequate, and that the proof shows that the land, on the day of the sale, was worth from five to eight times the amount paid by the purchaser for the deed executed to him in pursuance of that sale. Mere inadequacy of price is not ground for setting aside a sale. It is only when the price paid shocks the conscience of the court that the sale will be set aside on that ground. * * * (Emphasis added.)
In Weyburn v. Watkins, 90 Miss. 728, 735, 44 So. 145, 146 (1907) we find:
The testimony in this case establishes the fact that the land was sold for about 40 per cent. of its actual value. It is settled law, however, in this state, that a sale of land made by a trustee, otherwise valid, will not be set aside for mere inadequacy of price, unless the inadequacy is such as to shock the conscience. While the sale of this land was for less than its actual value, we would be unwilling to disturb the sale on that account.
Compare, however, Hesdorffer v. Welsh, 127 Miss. 261, 90 So. 3 (1921), wherein a sale was set aside for a grossly inadequate consideration when the evidence indicated the sale price was only $100 for property that had just prior thereto been sold for $1,200.
In comparing the present consideration paid by Cox to the fair market value of the land as found by the chancellor, we cannot say that he erred as a matter of law when his decision was within the proportions upheld by our prior decisions. To use the language of the judges, this is a hard case which has given us much concern, but we find no legal error therein. It is therefore affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, INZER and ROBERTSON, JJ., concur.