The question in this case is whether a mortgagee, who purchases the mortgaged property at a foreclosure sale must account to the mortgagor for the surplus arising from a sale of the property by the mortgagee within two weeks for two and one-half times the amount bid by the mortgagee at the foreclosure sale.
Marshall Spears borrowed $1250 from Central Financial Services, Inc. (CFS), and executed a promissory note and financial disclosure statement along with his wife, Ester Spears. They also executed a deed of trust covering certain real property described therein to secure the debt. The total amount secured was $1797.30 which included principal, interest, insurance and fees.
Spears gave his son $625 or half the amount of the principal and expected him to assist in paying back the loan. They could not agree on an arrangement so payments on the promissory note fell into arrears. CFS advertised the property for sale under the terms of the deed of trust, but stopped the advertisement when Spears paid the amount in arrears including cost of the foreclosure proceedings. Spears and his son still could not agree upon how they could make payments on the note, so once again it became delinquent. On October 12, 1979, after advertising the sale in accord with section 89-1-55 Mississippi Code Annotated (1972), the sale was conducted and CFS bid $1458.86, the amount of the indebtedness then due plus costs of foreclosure. There were no other bidders. Two days later, Spears was notified by an agent for CFS that he would have to vacate the premises. Spears claimed that this was the first time he was aware of the second sale and that he offered to pay the amount of the delinquency, but was told it was too late for that.
On October 24, 1979, CFS sold the property to Joe Stewart and Earl Aycock for $4,000. CFS then paid a $30 judgment lien *Page 404 
on the property and realized a profit of $2481.14. Aycock and Stewart sold the property to Roger C. Henderson on February 19, 1980 for $6,500. Henderson then made improvements to the property.
On March 11, 1980, Spears filed a bill of complaint in the Chancery Court of Lauderdale County which named CFS, Thomas B. Bourdeaux, Trustee, Joe Stewart, Earl Aycock and Roger Henderson as defendants. The bill prayed that the second foreclosure sale be set aside, alleging violation of Spears' constitutional rights, inadequate sale price and prayed for an injunction and other relief. The demurrer of the defendants was sustained and Spears appealed to this Court.
The appeal was submitted on March 3, 1981, and, in an unpublished opinion we held, "On the face of the complaint, taking as true Spears' allegation that the fair market value was $7,000, the consideration of $1458.86 was so grossly inadequate as to shock the conscience of this Court," We reversed and remanded for a trial on the merits because of the gross inadequacy of consideration alleged on the face of the complaint. Miss., 394 So.2d 1391.
The chancellor dismissed the case as against the trustee, Aycock, Stewart and Henderson, but found that the sale price at the second foreclosure sale was so inadequate that it shocked the conscience of the court. He determined from the evidence presented that the property had a fair market value of $6,000 at the time of the sale and ordered CFS to respond in damages based on the difference between fair market value and the price paid at the foreclosure sale. CFS appealed. Spears did not cross-appeal so the dismissal of the action against the trustee, Aycock, Stewart and Henderson is not at issue.
We have reviewed our cases involving adequacy of consideration as a ground for setting aside a foreclosure sale.[1] These cases do not address the issue involved in this case but do lay down the general rule that mere inadequacy of price[2] is not sufficient to set aside a foreclosure sale unless the price is so inadequate as to shock the conscience of the court. These cases, except *Page 405 Federal Credit Co. v. Boleware,[3] do not involve a resale by the mortgagee of property purchased by it at a foreclosure sale. We also note that most of the cases cited in footnote 1 involved sales during a time of economic depression and, as stated inHardin v. Grenada Bank, supra, many of the sales were deemed adequate because the entire country "was in the throes of a depression."
In this case, the chancellor found that the sale price was so inadequate it shocked his conscience. This finding is amply supported by the evidence because CFS bid only $1458.86 at the foreclosure sale and twelve days later sold the property for $4,000. We hold that a sale of mortgaged property within twelve days of the foreclosure sale at a price two and one-half times the bid of the mortgage is so inadequate, it would be "impossible to state it to a man of common sense without producing an exclamation at the inequality of it."[4] The chancellor did not set the sale aside; instead, he fashioned a remedy with which we agree in principle.
CFS was in compliance with the statutory law pertaining to the advertisement and sale of real property under deeds of trust. However, the sale of the property by CFS twelve days later resulted in a windfall to it of approximately $2,500. We deem this windfall to be unjust. If CFS had bid $4,000 at the foreclosure sale it would have been entitled to recover the amount of its indebtedness plus the expense of the sale, with the surplus being payable to Spears. Certainly a sale twelve days later for $4,000 enabled CFS to recover $2500 more than it risked in the transaction it made when it advanced $1250 to Spears.
We agree with the chancellor that the sale price was so inadequate that it shocks the conscience of this Court. However, we are of the opinion that the decree should be modified to reduce the amount of recovery against CFS.
The chancellor ordered the difference between the fair market value, which he fixed at $6,000, and the amount bid by CFS be returned to Spears. CFS should not be required to suffer any pecuniary loss, which it would do under the decree of the chancellor. There is no evidence of any conspiracy between appellant and its vendees to defraud appellee by fixing the sales price below market value; rather, the sale was an arms length transaction. We are of the opinion, and hold, that the difference between the amount bid and the $4,000 received by CFS at the private sale twelve days later should be used in computing the amount due Spears.
The record shows that the total amount of the indebtedness due at the time of the foreclosure sale was $1,458.86. Interest on this amount at the rate fixed in the note for twelve days amounts to $13.51. CFS also paid off a $30 judgment lien against the property and is entitled to credit for the judgment lien. We therefore, reduce the chancellor's award to $2,497.63, computed as follows:
Sale price of the property to Aycock and Stewart $4,000.00
LESS:
Amount of indebtedness $1,458.86 Judgment paid by CFS 30.00 Twelve days interest 13.51 1,502.37 ______________________ $2,497.63 *Page 406 
AFFIRMED AS MODIFIED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
[1] Myles v. Cox, 217 So.2d 31 (Miss. 1968); Triplett v.Bridgforth, 205 Miss. 328, 38 So.2d 756 (1949); Harris v.Bailey Avenue Park, Inc., 202 Miss. 776, 32 So.2d 689 (1947);Home Owners Loan Corp. v. Wiggins, et al, 188 Miss. 750, 196 So. 240 (1940); Anthony v. Bank of Wiggins, 183 Miss. 885,184 So. 626 (1938); Hardin v. Grenada Bank, 182 Miss. 689,180 So. 805 (1938); Blacketor v. Cartee, 172 Miss. 889, 161 So. 696
(1935); Wheeler v. Cleveland State Bank, 174 Miss. 542,164 So. 400 (1935); First Credit Co. v. Boleware, 163 Miss. 830,142 So. 1 (1932); Hesdorffer v. Welsh, 127 Miss. 261, 90 So. 3 (1921); and Weyburn v. Watkins, 90 Miss. 728, 44 So. 145 (1907).
[2] Criticism from many sources has been leveled against the foreclosure sales procedure in Mississippi because the true market value of the property is seldom bid at such sales.
For example, Professor Guthrie T. Abbott, in an article in 50 Mississippi Law Journal, page 665, discussed some of the reasons for inadequate bids in the following language.
It has been the experience of this author that most power of sale foreclosures in Mississippi produce little, if any, bidding at the sale. The vast majority of such sales results in the beneficiary under the deed of trust being the only bidder, and the successful bid by the beneficiary is usually for the amount of the indebtedness or less. It is almost impossible to succeed in having such a sale set aside on the basis of an inadequate sale price because the test is that the inadequacy from such a forced sale must be so gross as to shock the conscience of the court or to amount to fraud. This stringent standard should require that every possible safeguard be built into the power of sale foreclosure procedure to ensure as high a sales price as possible, but this is certainly not the case in Mississippi. The notice requirements, as discussed above, do the very minimum to notify the debtor(s), much less to notify prospective bidders. One of the classic modes by which a junior lienor may protect his interest is to bid at the foreclosure sale so as either to obtain the property or to guarantee a sale at close to market price. However, in Mississippi, the junior lienor will often only obtain knowledge of the sale after it has concluded. The advertisements required by statute are buried in the legal notices section of the newspaper, and with the exception of the beneficiary's bid up to the amount of the indebtedness, the sale must be made for cash to be paid in full at the time of the sale. The cumulative effect of the deficient sales procedures described above is to ensure a severely depressed sales price at most Mississippi power of sale foreclosures. [50 M.L.J. at 680-81. (1979)].
[3] In Federal Credit Company v. Boleware, supra, note 1, Boleware defaulted in his truck payments and Federal Credit repossessed it. A public sale was held in accordance with the conditional sales contract and Federal Credit became the purchaser for $85, raising a $75 bid made by another. Federal Credit repaired the truck, painted it, outfitted it with tires, purchased insurance on the truck, and sold it later for $325. The total indebtedness was in excess of $220 at the time of the sale. The cost of the repairs was not shown. Federal Credit then sued Boleware for a deficiency of $138.08.
Boleware offered evidence that the truck was worth more money than it brought at the public sale and was worth enough more to discharge the indebtedness then existing. The Court held that mere inadequacy of price will not operate to set a sale aside, unless it is so gross as to furnish evidence of fraud, and there must be an inequality so strong, gross and manifest "that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it." This Court reversed and rendered, holding that Federal Credit was entitled to a peremptory instruction.
[4] Federal Credit Co. v. Boleware, 163 Miss. at 835, 142 So. at 2.