This opinion reflects the consolidation of two actions. The first ("Cooper I") is an appeal by construction lienholders, Allied Steel Corporation, Park Supply Company and Quick Grice, Inc. from a July 1, 1988, decision of the Pearl River County Circuit Court, finding Carle Cooper not personally liable for debts owed to them in connection with the development of the Chimney Square Mall. The second ("Cooper II") is an appeal by Cooper from a February 28, 1991, ratification by the Pearl River County Circuit Court of a Sheriff's Sale and Conveyance of the west side of the Chimney Square property to the appellants inCooper I and additional construction lienholders, David Diamond and James T. Bennett, Jr. d/b/a The Lite House.
Finding that the evidence in the record does not support the lower court's finding, but does support a finding that Cooper and his former business associate, Bernard Heaps, acted as partners or joint venturers in the development of the Chimney Square Mall project, we reverse the decision of the Circuit Court in CooperI. We affirm the Circuit Court's ratification of the Sheriff's Sale and Conveyance in Cooper II.
 FACTS
Carle Cooper, a real estate developer and contractor, and Bernard Heaps, owner of an interior construction business alternately known as "House of Interiors" and "House of Interiors Construction," purchased a property known as the "old blanket factory" from Sunbeam Electric Company in 1984 for $155,000.00. Each owned an undivided one-half interest in the property. Although they intended to resell the property, their efforts to do so were unsuccessful.
In 1986, Cooper and Heaps made the decision to renovate part of the building for use as a retail mini-mall. They obtained a variance for commercial use and began renovations later that year. To finance the project, they co-signed a promissory note and deed of trust to the First National Bank of St. Tammany Parish in Slidell, Louisiana, on June 2, 1986. As the proceeds of the $410,000.00 construction loan were disbursed by the bank, they were deposited in a joint checking account established *Page 115 
for the purpose of paying for materials and work incident to the transformation of the east half of the old factory building into the Chimney Square Mall.
Cooper obtained a builder's risk insurance policy as well as a loss of earnings policy from Thigpen Insurance Company, Inc. He signed the policy application on behalf of Cooper, Heaps and Latier Corporation, one of his business enterprises, added to the application at his request.
Work on Chimney Square Mall began in 1986. From the beginning, it appears from the record that Cooper and Heaps took a ratherad hoc approach to the undertaking. They entered into no express agreements with each other. Likewise, the record indicates that the rehabilitation of the building was done on a day-by-day basis rather than under the aegis of an overall design and development plan. It appears, however, that Cooper and his construction crew concentrated on the site work and refurbishing the exterior, while Heaps and the House of Interiors were charged with renovating the interior and adapting it for re-use as a mini-mall.
Materials for the interior were supplied by the appellants in the case sub judice, as well as the Lite House. Cooper and Heaps, as well as the site foreman, Bruce Burge, ordered materials as needed. Most were billed to the House of Interiors, but paid for with checks requiring the signatures of both Heaps and Cooper.
Late in 1986, as funds dwindled, Cooper and Heaps fell behind in the payments on the open accounts they held with their suppliers. One by one, construction and materialman's liens were filed against the property as follows:
 Lienor Date Lien Filed Principal Amount
 First National Bank 06/3/86 $410,000.00 Quick Grice 12/9/86 $ 24,658.39 Allied Steel 12/18/86 $ 2,935.00 Park Supply 01/8/87 $ 13,093.91 The Lite House 3/30/87 $ 6,251.26 Thigpen Insurance 7/15/87 $ 6,093.08
The appellees' liens were filed against the unimproved west side of the building only. Hibernia National Bank, successor to the failed First National Bank of St. Tammany Parish, purchased the renovated east side of the building at a foreclosure sale in September, 1989 for $378,000.00 and subsequently sold it to the County for $300,000.00 in May, 1990. Seeking to hasten foreclosure of the remaining half of the Chimney Square property, but fearing that a deficiency might leave their open accounts unpaid, the various construction and materialmen's lienors then instituted a series of claims against Cooper and Heaps.
David Diamond and James T. Bennett d/b/a The Lite House were the first to file suit. In a complaint against Bernard Heaps d/b/a The House of Interiors and the House of Interior Construction, Cooper, and the First National Bank of St. Tammany Parish, which had financed the project, they sought recovery of approximately $9,808.17 for lighting and electrical fixtures supplied to the project. Although Cooper appealed the August 17, 1987 judgment against him, this Court affirmed per curium the Circuit Court's decision in Carle Cooper v. David Diamond andJames T. Bennett, Jr. d/b/a The Lite House, 554 So.2d 925 (Miss. 1989).
Following the judgment against Cooper, the Lite House amended its complaint to join as defendants the other lienholders: Quick Grice, Park Supply Company, Allied Steel Corp. and Thigpen Insurance Agency. In a series of joinders and crossclaims, these parties sought to foreclose on their construction liens, to consent to a foreclosure sale, and to hold both Cooper and Heaps liable for any deficiencies that might result. *Page 116 
A hearing was held on April 1, 1988 and the Pearl River County Circuit Court entered its final order on May 31, 1988. The court found in favor of Thigpen Insurance Agency on the matter of an unpaid premium on an insurance policy Cooper had obtained on the Chimney Square project. However, as to the claims against Cooper asserted by Allied Steel, Park Supply and Quick Grice, the court found that while entitled to their respective shares in any judgment against the Chimney Square property, they could not recover against Cooper personally because there was insufficient evidence to show that a partnership existed between Cooper and Heaps or that the parties had relied on the existence of a partnership when they provided materials for the Chimney Square project.
In June, 1988, Allied Steel, Quick Grice and Thigpen Insurance Agency, as well as Park Supply Company, entered Motions for a New Trial. A hearing on the motions was held on July 1, 1988. The trial court overruled the motions.
The efforts by all four Appellees to enforce their liens had been thwarted further by Heaps' filing for bankruptcy in the U.S. Bankruptcy Court, Southern District of Mississippi. Those proceedings, however, were dismissed on June 1, 1989. On June 19, 1989, the Circuit Court ordered the sale of the property to satisfy some $67,166.90 in judgments against it owed the construction lien holders.
On June 26, 1989, the Circuit Clerk of Pearl River County issued a Special Writ of Execution pursuant to Miss. Code Ann. §85-7-153, directing the Sheriff to conduct a sale of the west side of the building known as the Old Blanket Factory in Picayune, Mississippi to satisfy the judgments. Notice of the sale was published in accordance with the provisions set forth in Miss. Code Ann. § 89-1-55.
The sale was held on July 28, 1989 on the steps of the Pearl River County courthouse. Byron Stockstill, representing the appellees at sale, was the highest, best and only bidder. He conveyed to the Sheriff the sum of $1,000 and received the Sheriff's deed to the property. Following a flurry of motions by both Cooper and the Appellants, the Circuit Court entered a judgment on August 28, 1989, finding, in relevant part, that the Sheriff's sale was "proper and valid."
On June 11, 1990, Cooper filed a motion to set aside the Sheriff's sale and for other related relief. Hearings on this and a variety of other motions filed by Cooper were held on August 28, 1990. The Circuit Court heard testimony from the parties, as well as from two expert witnesses, real estate appraisers who had submitted written appraisals of the subject property. Finding that the sale served to satisfy $54,000.00 of the judgment against Cooper, the Circuit Court confirmed and ratified the sale and conveyance on February 28, 1991, and apportioned the credit on the indebtedness among the appellees.
 Cooper I
Contrary to its earlier findings in the Diamond and Bennett litigation, the Circuit Court found that Cooper was not personally liable to the remaining construction lien holders because the relationship between Cooper and Heaps did not rise to the level of a partnership. Finding that the evidence in the record does not support the findings of the trial court, we reverse the decision of its decision in Cooper I.
In 1976, this state adopted the "Mississippi Uniform Partnership Law," Miss. Code Ann. § 79-12-1 et seq. (1989 and Supp. 1991). These provisions, a codification of the common law, define and govern the operation of businesses explicitly and implicitly run as partnerships. Pursuant to § 79-12-29, all partners are jointly and severally liable for all debts and obligations of the partnership. Thus, our finding that Cooper and Heaps developed Chimney Square as a partnership renders them both personally liable for the debts owed to the Appellants for payment of materials they supplied for the project.
The statutory provisions of the Uniform Partnership Law are also applicable to joint ventures. Whittington v. Whittington,535 So.2d 573 (Miss. 1988); Hults v. Tillman, 480 So.2d 1134, 1144-1145 *Page 117 
(Miss. 1985). As we concluded in Hults, after an in-depth analysis of the nature of joint ventures, "[a] joint venture might be characterized as a single shot partnership." Hults,
480 So.2d at 1143. It is a business relationship used for a specific undertaking for profit as opposed to a general, ongoing business. Hults, 480 So.2d at 1141; Sample v. Romaine,193 Miss. 706, 8 So.2d 257 (1942). Thus, whether the development of a single project such as the Chimney Square Mall is characterized as a partnership or a joint venture is immaterial; the same principles are used to determine the existence of each relationship and Uniform Partnership Law applies if either is found.
Miss. Code Ann. § 79-12-11 defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit." Keppner v. Gulf Shores, Inc.,462 So.2d 719 (Miss. 1985). Miss. Code Ann. § 79-12-13(4) provides that "the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business," unless those profits were received as payment for a debt, wages, interest on a loan or consideration for the sale of the goodwill on a business. Cooper's argument that his business relationship with Heaps falls outside the statutory definition because there was no profit is not persuasive. Further, we find no meaningful distinction between the concept of "profit" and the "decent financial return" Cooper sought to achieve.
A small but thorough body of case law serves to articulate further the factors determinative of a partnership, supplementing the parameters set forth in The Uniform Partnership Act. That Cooper and Heaps each owed an undivided one-half interest in the Chimney Square property does not, in and of itself, make them partners. Miss. Code Ann. § 79-12-13. For their relationship to be more than a mere co-tenancy, there must be an intent to form a partnership or joint venture. Fewell v. American Surety Co.,80 Miss. 782, 28 So. 755, 757 (Miss. 1902). More recently, we stated that "[w]hat is essential to any intent to form a joint venture is the idea that the parties are engaging in the undertaking with both parties owning the venture, with a right of mutual control, and joint obligations and liabilities." Hults, 480 So.2d at 1146.
Although Heaps testified that the two were partners in the Chimney Square venture, Cooper vehemently denied the existence of a partnership relationship. The record before us indicates that Cooper and Heaps entered into no express agreement defining their business relationship. However, absent an express agreement defining the nature of an association, the intent of the parties may be inferred from their actions or conduct. Hults, 480 So.2d at 1143. The record clearly indicates that both Cooper and Heaps conducted themselves in a manner inferring a partnership, under the guidelines set forth in Hults. Although the existence of the co-tenancy is not in and of itself, indicative of the intent to form a partnership or joint venture, once the decision was made to develop the property as a shopping mall rather than to just resell it without improvements, Cooper and Heaps, in turn, acted to assume joint obligations and liabilities. Despite the fact that Heaps provided most of the initial capital for the purchase of the building, ownership of the property was recorded in both men's names, with each possessing an undivided one-half interest. To finance the rehabilitation of the building, they signed as co-obligors a note for $410,000 with the First National Bank of St. Tammany Parish. The proceeds of the loan were deposited in a joint checking account. Checks from this account, bearing both men's names and requiring the signatures of both, were used to pay construction workers as well as materialmen. Indicative of his recognition of the potential liability, Cooper acquired on their behalf both a builder's risk insurance policy as well as a loss of earnings policy from Thigpen Insurance Agency.
The record further contains substantial evidence of mutual control over the Chimney Square development by the manner in which Cooper and Heaps carried out the project. As distinguished from Croenne v. Irby, 492 So.2d 1291 (Miss. 1986), upon which Cooper relies, wherein this Court *Page 118 
found that a partnership no longer existed when one party continued to use the name of the other who had always been a "silent partner" and had become further disinvolved from the alleged partnership for more than a decade, the record indicates that Cooper was deeply involved in the project on a daily basis. Heaps testified that the project was not developed according to an overall plan; rather, he and Cooper met on an almost daily basis to make decisions about design and construction details. Cooper, by his own admission, spent a considerable amount of time actually at the Chimney Square site. Further, the site foreman purchased materials for the project under Cooper's authority and received paychecks signed by both Cooper and Heaps.
Miss. Code Ann. § 79-12-13(1) states that "[e]xcept as provided by section 79-12-31 persons who are not partners as to each other are not partners as to third persons." Section 79-12-31 provides for partnership by estoppel, stating that representation byconduct of a partnership relationship is sufficient to find a partnership by estoppel as to third parties who have relied on the representation in giving credit to the partnership. Furthermore, this Court has held that acts of one partner, acting in the scope of the partnership, binds the others. Beane v.Bowden, 399 So.2d 1358 (Miss. 1981). From the testimony given by William Bligh, president of Allied Steel and David Travis, vice-president of Quick Grice, it is apparent that when supplying materials for Chimney Square, they believed that they were dealing with both Heaps and Cooper, acting as partners. Likewise, Glenda Wilson, credit and office manager for Park Supply Company testified that she only spoke with Cooper after the accounts for materials delivered to Chimney Quare became past due. She stated, as did the others, that the accounts were billed under the name "House of Interiors."
Finding that the evidence in the record does not support the lower court's decision and that there is substantial evidence showing that Cooper and Heaps acted as partners or joint venturers in the development of Chimney Square Mall, and did not represent themselves as such to the appellants, we reverse the decision of the Pearl River County Circuit Court.
 Cooper II
We have frequently reiterated our adherence to the general rule that, absent any irregularity in the conduct of a foreclosure sale, it may not be set aside unless the sales price is so inadequate as to shock the conscience of the Court "or to amount to fraud." Wansley v. First National Bank of Vicksburg,566 So.2d 1218, 1224 (Miss. 1990); Haygood v. First National Bank ofNew Albany, 517 So.2d 553, 556 (Miss. 1977); Lake HillsdaleEstates, Inc. v. Galloway, 473 So.2d 461, 465 (Miss. 1985);Peoples Bank Trust Co. v. L T Developers, Inc.434 So.2d 699, 709 (Miss. 1983). To shock the conscience of the Court, the bid price must be so inadequate that "it would be `impossible to state it to a man of common sense without producing an exclamation at the inequality of it.'" Central FinancialServices, Inc. v. Spears, 425 So.2d 403, 405 (Miss. 1983), quoting Federal Credit Company v. Boleware, 163 Miss. 830,142 So. 1, 2 (1932).
Cooper asserts on appeal that the sale of the property, which he contends is valued at a minimum of $187,000.00, to the Appellees for the nominal sum of $1,000.00 in unconscionable. Making only one reference throughout his brief to the Circuit Court's credit of $54,000.00 toward the judgment against the property, Cooper argues that it does nothing to remedy the inadequacy of the sales price. On the other hand, the Appellees assert that $55,000.00 was adequate consideration for the property and that the Circuit Court did not err in so finding.
 DETERMINATION OF FAIR MARKET VALUE
A legal determination of the adequacy of the purchase price is predicated upon the establishment of the fair market value of the property. Haygood, 517 So.2d at 556; Lake Hillsdale, 473 So.2d at 465. The determination of the fair market value is a question for the trier of fact. Myles v. *Page 119 Cox, 217 So.2d 31, 34 (Miss. 1968). The Circuit Court, sitting without a jury, is accorded the same deference with regard to its findings of fact as a chancellor. Kight v. Sheppard BuildingSupply, 537 So.2d 1355, 1359 (Miss. 1989); Hardy v. FirstNational Bank of Vicksburg, 505 So.2d 1021, 1023 (Miss. 1987). On appeal, this Court will respect the lower court's findings of fact when they are supported by reasonable evidence in the record and are not manifestly wrong. Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990); Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985).
In the case sub judice, the Circuit Court was well-acquainted with the property in question because of the extensive prior litigation between the parties. He made a personal inspection of the site on August 29, 1990. At the August 28, 1990, proceedings, the Circuit Court considered testimony by representatives of the parties as well as by two licensed real estate appraisers, whose valuations of the property were made a part of the record.
Notwithstanding that he and Heaps had paid only $155,000.00 for the entire property in 1984, Cooper testified that, in his opinion, the subject part of the property had a fair market value of approximately $190,000.00 to $200,000.00. He further indicated that in a "worst case scenario" situation, he thought the property might only be worth $128,640.00, based on a multiple of 3.77 times its assessed value.
Roddie Powell submitted a brief letter appraisal of $187,500.00 on Cooper's behalf. His testimony shed little light on his appraisal. He reiterated that he had used a replacement cost approach, less depreciation, but did not explain what sort of depreciation allowance he had factored in. He testified that he compared the lot itself with the value of residential properties in the vicinity and did not initially remember that the subject property, however, was originally zoned for medical use. He did not take into consideration factors such as the monthly income the property had been generating or the potential uses of the building. He acknowledged that the building "was in dire need of repairs" and that the floor was "in pretty bad shape."
James Drummond, a representative of Park Supply Co., testified that when the group was considering the amount they would bid for the property at the Sheriff's sale, they had estimated that it would have a market value of between $50,000.00 and $60,000.00. He further testified that Cooper had contacted him in early 1990, admonishing him that a potential sale of the west end of the property to the County for $115,000.00 was "ridiculous." However, evidence of mere offers or options to purchase property is not competent to establish its fair market value. Mississippi StateHighway Commission v. Robertson, 350 So.2d 1348, 1350 (Miss. 1977).
Don Ginn, who submitted a detailed appraisal analysis on behalf of the Appellees, valued the property at approximately $54,800.00, using three different appraisal approaches. He explained at length the various appraisal methods used. Most significantly, he discussed the importance of the depreciation factor, indicating that because of the age of the building and its state of great disrepair, it would have to be depreciated one hundred percent to zero value.
After consideration of the testimony and other evidence submitted, as well as a physical inspection of the site, the Circuit Court accepted the lower appraisal as a reasonable value for the property. The trial court found that:
 While the actual value of the property could conceivably be higher, since the original purchase price in 1984 for the entire property was $155,000.00, this property being less than fifty percent of the original property and being the part fartherest away from the hospital and business area of the city, it would not have the same value as the other portion and therefore would have a value less than $77,500.00. The property values, as was testified, have declined since 1984 and, therefore, the appraised value of $55,000.00 would be sufficient in this Court's opinion.
The evidence in the record supports the Circuit Court's findings. Mr. Ginn's lower *Page 120 
estimate of $54,800 was explained in detail in his comprehensive appraisal analysis as well as in more than forty pages of testimony. His appraisal also took into consideration material factors such as zoning, the area's surplus of commercial space, and the depressed economy of the community and its impact on local real estate values, which had declined significantly since Cooper and Heaps purchased the property in 1984. See Hardin v.Grenada Bank, 182 Miss. 689, 713, 180 So. 805, 812 (1938) (one of several Depression-era cases cited in Spears, 425 So.2d at 404-405, n. 1, which points out that the economy of the area at the time of the sale is a factor to consider in determining fair market value). Further, both parties concede that the property is in a state of disrepair, which is well documented by photographs entered into evidence, showing both the deteriorated west side of the structure and, in contrast, the rehabilitated east side.
Mr. Powell's appraisal of $187,500.00 and his rationale for that figure are neither supported or explained in his brief appraisal letter or in his short testimony. He did indicate that he based his estimate on the value of the land on sales of nearbyresidential properties, whereas Mr. Ginn's estimates were based on sales of comparable commercial/industrial properties. While evidence of sales of similar properties is admissable to establish the fair market value of a specific property, there also must be evidence that the properties are indeed comparable in area, size, location and improvements, although they need not be identical in every respect. Mississippi State HighwayCommission v. Franklin County Timber Co., Inc., 488 So.2d 782, 785 (Miss. 1986) Pearl River Valley Water Supply District v.Wright, 203 So.2d 69, 71-72 (Miss. 1967) (use of comparable sales relevant to determination of fair market value of real property in condemnation proceedings). Accordingly, we find that the Circuit Court acted within its discretion in giving greater weight to the comparables presented by the Appellee's appraisal submitted by Mr. Ginn.
Evidence of recent sales of the same property is likewise relevant to determination of the fair market value of the property. Spears, 425 So.2d at 405; Hesdorffer v. Welsh,127 Miss. 261, 90 So. 3, 6 (1921). The Circuit Court found that Cooper and Heaps had purchased the entire property for $155,000.00 in 1984; that commercial real estate values in the area had declined since that time; and that since the subject property was less than half of the entire parcel, it should be worth less than $77,500.00. We note further that the renovated east side of the building was sold at foreclosure sale to Hibernia National Bank for $378,000.00 and subsequently, to Pearl River County for $300,000.00. That portion of the building was re-assessed by the County for tax purposes to amount to eighty percent (80%) of the total value of the property. Based on those figures, our calculations show that the fair market value of the west end of the property theoretically could be somewhere between $75,000.00 and $96,000.00.
 DETERMINATION OF THE ADEQUACY OF THE BID PRICE
The adequacy of the bid price is a question of law, left to the discretion of the judge within the parameters set forth by this Court. Haygood, 517 So.2d at 556, Myles, 217 So.2d at 35. The threshold of inadequacy, or what it takes to shock the conscience of the court, has been a somewhat imprecise standard. This Court long followed the rule of thumb of "about forty percent" of fair market value first articulated in Weyburn v. Watkins, 90 Miss. 728, 733-36, 44 So. 145, 145-146 (1907). More recently, inCentral Financial Services, Inc. v. Spears, 425 So.2d 403
(1983), we found that a foreclosure sale bid of thirty-six percent (36%) of fair market value was inadequate. A survey of Mississippi cases concluded that the threshold of unconscionability lies around forty percent of fair market value.See Note, Mortgages-Mortgagor's Remedies-UnconscionableWindfall from Resale of Security Immediately After Mortgagee'sPurchase at Foreclosure *Page 121 Sale Gives Mortgagor a Right to Damages, 53 Miss.L.J. 533, 546 (1983).
Were the mere $1,000 recited on the Sheriff's conveyance the total consideration paid by the construction lien holders, the bid price clearly would be unconscionable, even in light of the Circuit Court's finding that the lower appraisal correctly reflected the fair market value of the property. However, as the Appellees contend, they purchased the property with knowledge that some $44,694.87 in past due city and county taxes were owing and that they were potentially liable for that amount. Moreover, as the Circuit Court recognized, the Appellees had construction liens and judgments against the property totalling $67,166.90. Thus, the judge stated in his January 31, 1991 order:
 This Court finds that the only need in bidding higher would be to give a credit against the liability of the defendants on their judgments and debts to the plaintiffs and that the amount of the property should have been bid at a higher rate for that reason solely.
 If the Plaintiffs will credit the indebtedness and judgments of the defendants an additional $54,000.00, then this Court will confirm and ratify the sale.
Accordingly, the Circuit Court, in ratifying and confirming the validity of the sale, further found that:
 Plaintiff's judgments shall be partially satisfied and Defendant's indebtedness credited in the additional sum of $54,000.00 for a total of $55,000.00 less Court costs and Sheriff's fees.
In Harris v. Bailey Avenue Park, Inc., 202 Miss. 776,32 So.2d 689, 692-693 (1947), we were faced with an analogous situation wherein a creditor purchased property at a foreclosure sale for a bid of only $1,000.00. It had been valued by witnesses at between $12,000.00 to $14,000.00 and $30,000.00. In finding that the purchase price was adequate, we stated that we must take into consideration that:
 in reality the appellant paid the amount of the indebtedness of $4,000 due him, plus two years' taxes and the $11,508 due on prior liens, plus one year's interest on all three loans, and when this is done we do not think it can be said that the price paid is grossly inadequate.
Harris, 32 So.2d at 693.
In more recent years, such distress sales generally have yielded bid prices which reflect the debt owed the bidder(s). Abbott, Some Basic Priority Problems in a Land DevelopmentProject in Mississippi with Emphasis Upon Power of SaleForeclosure Procedures, 50 Miss.L.J. 665, 680-681 (1979).
The bid price in the case sub judice, as amended by the Circuit Court to represent a $55,000.00 credit toward the amount owed to the Appellees, represents one hundred percent of the fair market value of the property. Even assuming arguendo that the parcel could command a fair market value of $75,000.00, a bid price of $55,000.00 does not fall under the threshold of unconscionability established by this Court. Only if the evidence supported a fair market value in the neighborhood of $137,000.00 would such a bid price begin to fall below the forty percent threshold level. Therefore, we cannot say that the findings of the Circuit Court were manifestly wrong.
Almost as an afterthought, Cooper further asserts that the Sheriff's sale should be set aside because the Sheriff did not apportion the proceeds of the sale among the various lienholders. He further notes that the judgment rolls were not examined prior to distributing the sale proceeds. It was brought out at the trial that Phillips Building Supply Company, not a party in this or any companion litigation, had recorded on the judgment rolls a judgment against Bernard Heaps. The record does not indicate whether Heaps was personally liable or if the lien attached to the property. Further, the judgment was entered on May 5, 1987. The record in Cooper I indicates that the Appellees' construction liens were properly filed and recorded prior to that time. As to priorities among the Appellees, the Circuit Court provided for allocation of credit toward indebtedness among them in the February 28, 1991 Final Judgment. *Page 122 
Accordingly, we reverse the decision of the Circuit Court inCooper I and affirm the decision in Cooper II.
AS TO COOPER I: REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
AS TO COOPER II: AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.