# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00569-COA

RUTH DEDEAUX                                                                APPELLANT

v.

COASTAL DEVELOPMENTS INC.                                                   APPELLEE

DATE OF JUDGMENT:              04/10/2018
TRIAL JUDGE:                   HON. CARTER O. BISE
COURT FROM WHICH APPEALED:     HARRISON COUNTY CHANCERY COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        MICHAEL JOSEPH YENTZEN
ATTORNEY FOR APPELLEE:         WILLIAM W. DREHER JR.
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               RENDERED IN PART - 09/03/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     The Harrison County Circuit Court, First Judicial District, awarded Ruth Dedeaux a

judgment against Coastal Developments Inc. (Coastal) for $33,419.76 plus 8% annual

interest and costs. After almost four years of accrued interest, Dedeaux's judgment against

Coastal amounted to $44,113.84. To satisfy the judgment, Dedeaux obtained a writ of

execution directing the sheriff to conduct a sale of four parcels of Coastal's land. Dedeaux

purchased the four parcels at the sheriff's sale for $20,000. She later sold three of the parcels

to third parties for $76,500.

¶2.     Coastal filed a complaint to set aside the conveyances. The Harrison County

Chancery Court, First Judicial District, found that Dedeaux's winning bid of $20,000 was unconscionably low compared to the parcels' fair market value. The chancellor therefore ordered Dedeaux to pay Coastal $32,386.16 as reimbursement for the overage amount she received in selling the three parcels for $76,500 and to convey the fourth unsold parcel back to Coastal. Dedeaux appeals the chancellor's judgment on the grounds that (1) Coastal came before the chancellor with unclean hands; (2) the judgment was unsupported by Mississippi caselaw; (3) the judgment improperly awarded Coastal multiple inconsistent remedies; and (4) the judgment improperly punished Dedeaux.

¶3.	Upon review, we affirm the portion of the chancellor's judgment ordering Dedeaux to convey the unsold parcel to Coastal and to reimburse Coastal for any surplus resulting from the sales contracts. We find, however, that the chancellor erred in calculating the reimbursement amount that Dedeaux owed Coastal. In determining the parcels' fair market value, the chancellor relied only on the total sales price of $76,500 for the three parcels that Dedeaux sold to third parties. The chancellor's valuation failed to take into account, however, the $9,458.63 in expenses that Dedeaux paid during the real-estate closings. After subtracting from $76,500 both Dedeaux's $9,458.63 in real-estate expenses and her $44,113.84 prior judgment against Coastal, we find that her surplus only amounted to $22,927.53. We therefore reverse the portion of the chancellor's judgment determining the reimbursement amount that Dedeaux owed Coastal and render a new monetary judgment in Coastal's favor for $22,927.53.

2

## FACTS

¶4. On December 15, 2011, the circuit court awarded Dedeaux a judgment against Coastal for $33,419.76 plus 8% annual interest and costs. To satisfy the judgment, Dedeaux sought a sheriff's sale of four parcels of real property owned by Coastal. As the highest bidder at the October 9, 2015 sheriff's sale, Dedeaux obtained the four parcels for $20,000. Coastal claimed, however, that Dedeaux's winning bid amount "was less than the fair market value of even any one of the four parcels sold, and by caselaw was so inadequate so as to shock the conscience of the court."

¶5. On October 23, 2015, Dedeaux conveyed one of the parcels to Lester Ray and Danielle Mae McKelvin (the McKelvins) by warranty deed. On the same day, the McKelvins entered into a purchase-money mortgage with Dedeaux for $55,196.03, as evidenced by a deed of trust executed to Dedeaux. Dedeaux conveyed a second parcel of land to Austin Alexander by warranty deed dated January 22, 2016, and a third parcel to John Neideffer by warranty deed dated March 16, 2016. The parties presented no evidence to show that Dedeaux ever sold the fourth parcel.

¶6. Coastal filed a complaint against Dedeaux, the McKelvins, Alexander, and Neideffer to set aside the warranty deeds. According to Coastal's complaint, the fact that the McKelvins entered into a purchase-money mortgage for more than twice the winning bid amount for all four of the parcels "clearly show[ed] the inadequacy of the original bid price and that . . . Dedeaux knew it was inadequate . . . ." Coastal also took issue with Dedeaux's

3

failure to seek judicial confirmation of the sheriff's sale before she conveyed three of the parcels to third parties. Coastal therefore asked the chancellor to perform an audit of the sale and to (1) set aside some or all of the deeds; (2) award Coastal any sales proceeds over and above Dedeaux's judgment amount; or (3) declare that the judgment against Coastal had been satisfied.

¶7.     Dedeaux moved for summary judgment. The McKelvins, Alexander, and Neideffer also collectively filed a motion for summary judgment. Coastal responded and filed its own summary-judgment motion. Following a hearing, the chancellor determined that $10,694.08 (or about four years of interest) should be added to the prior judgment the circuit court had awarded Dedeaux. With the accrued interest factored in, Dedeaux's total judgment against Coastal now amounted to $44,113.84. The chancellor denied the parties' various summary-judgment motions after finding that genuine issues of material fact remained due to the following: (1) no party had offered any coherent itemization of undisputed facts or time line of events; (2) the court had to engage in its own calculation as to the total amount Coastal owed Dedeaux; (3) the parties had failed to provide sales prices on the parcels conveyed to Alexander and Neideffer, which prevented a determination of the reasonableness of those sales; (4) a substantial dispute existed as to the fair market value of the properties at issue; (5) allegations existed as to whether the McKelvins, Alexander, and Neideffer were bona fide purchasers of the land for value without notice; and (6) no evidence had been provided as to Coastal's location on the date of the sheriff's sale.

4

¶8.     On March 2, 2017, the chancellor entered a final judgment to dismiss the McKelvins, Alexander, and Neideffer from the litigation.  The chancellor noted that Coastal had moved for the dismissal and that the parties had advised the court of their agreement to the dismissal.  As a result, the chancellor dismissed with prejudice Coastal's claims against the McKelvins, Alexander, and Neideffer, which included any claims related to the parcels conveyed to those parties.  Coastal reserved all its claims against Dedeaux, which the chancellor heard on March 13, 2017.

¶9.     Following the March 13, 2017 hearing, the chancellor entered an order regarding Coastal's remaining claims against Dedeaux.  The chancellor found that the agreed judgment to dismiss the McKelvins, Alexander, Neideffer, and any claims to the parcels they had purchased from Dedeaux rendered moot the issue of whether the foreclosure sale should be set aside.  The chancellor further found, however, that issues remained as to the parcels' fair market value, whether the judgment against Coastal had been satisfied, and whether Dedeaux had realized a profit beyond what she was owed.

¶10.    Dedeaux submitted to the chancellor the affidavit of Michael Madden, a real-estate broker and investor.  Madden's affidavit discussed the 5.3-acre parcel of land that Dedeaux had sold to the McKelvins.  According to Madden, in August or September 2015, he had clients interested in purchasing the parcel for $18,000 to $22,000.  The chancellor found, however, that while Madden provided the amount his clients would have been willing to pay for the 5.3-acre parcel, he never provided an estimate as to the parcel's fair market value.

5

The chancellor also noted that Coastal had submitted an affidavit from Milburn Mallette, who stated that he sold the 5.3-acre parcel to two individuals for $120,000 and that the McKelvins had agreed to purchase the property from those individuals for $140,000. Coastal provided the purported contract for the sale and purchase of the property. Although the document was dated June 6, 2013, and referenced the McKelvins, the document was neither signed nor notarized and failed to include a description of the subject property.

¶11. With regard to the other three parcels at issue, the chancellor found that Dedeaux had submitted an affidavit from Denise Fell, who valued two of the parcels at $7,500 each and the third parcel at $10,000. Fell made these valuations in August or September 2015, which was four to six months before the conveyances to Alexander and Neideffer. The chancellor found the parties had failed to provide any information on the actual amounts that Alexander and Neideffer had paid for their parcels.

¶12. The chancellor determined that the sale of the 5.3-acre parcel to the McKelvins "more than satisfied the outstanding judgment" against Coastal. The chancellor then stated:

> It is therefore unclear to this [c]ourt how Ruth Dedeaux was able to obtain a [s]heriff's [d]eed to three additional parcels of . . . [Coastal's] property to satisfy the December 15, 2011[ d]ecree of [j]udgment the [c]ircuit [c]ourt entered in her favor.
>
> In addition[,] this [c]ourt is unable to determine the fair market value of the 5.3[-]acre parcel from the evidence presented by the parties. If the [c]ourt simply averages Mr. Madden's $22,000 proposed sale price with the $120,000 contract for sale, the fair market value is $71,000.00. Ruth Dedeaux sold the 5.3[-]acre parcel to the McKelvins for $55,196.03.
>
> The testimonial evidence and exhibits presented by both parties at the

6

hearing on March 13, 2017, is incomprehensible. The parties have failed to offer proof sufficient for this [c]ourt to establish a fair market value for the properties in question. The only fact that is clear to this [c]ourt is that with the sale of the 5.3[-]acre parcel, the debt owed by Coastal . . . to Ruth Dedeaux was satisfied. . . . The [c]ourt must determine the fair market value of the 5.3[-]acre parcel, the . . . [parcel sold to Alexander, and the parcel sold to Neideffer]; and . . . [o]nce the fair market value is determined, the [c]ourt must determine if Ruth Dedeaux received funds over and above the amount owed to her.

¶13. After once again stating that the sale of the 5.3-acre parcel to the McKelvins had satisfied Dedeaux's judgment against Coastal, the chancellor ordered Dedeaux to convey the unsold parcel to Coastal within thirty days. The chancellor also ordered the parties to set a hearing date within sixty days so he could determine the fair market value of the three parcels conveyed to the McKelvins, Alexander, and Neideffer. In addition, the chancellor ordered each party to provide (1) a valuation of the three conveyed parcels and how that valuation was reached; (2) any related exhibits; (3) a witness list; (4) "the sales price for each of the three parcels for any sale that occurred within the past seven (7) years"; and (5) a copy of the HUD, any sales contract related to each transaction, and a copy of the tax assessor's valuation of the parcels for the past seven years.

¶14. Dedeaux filed a motion to reconsider or to amend the chancellor's judgment. After finding that he had been unable to adjudicate all the issues between the parties in his May 15, 2017 order, the chancellor found that the prior order failed to constitute a final appealable judgment. As a result, the chancellor denied Dedeaux's motion as untimely.

¶15. Following a September 18, 2017 hearing on his request for additional information, the

7

chancellor entered his order on November 1, 2017. Based on the parties' submissions, the chancellor found the following: (1) in 2015, the tax assessor's total valuation of the four parcels amounted to $79,706; (2) a certified residential appraiser had testified that at the time of the sheriff's sale on October 9, 2015, the fair market value of the four parcels was $85,100; (3) Dedeaux sold three of the parcels to the McKelvins, Alexander, and Neideffer for $76,500; (4) Dedeaux's winning bid of $20,000 amounted to 25% of the 2015 tax assessor's valuation for all four parcels, 24% of the appraised fair market value for the four parcels, and 26% of the total contract sales prices she received for the three parcels she sold. Based on this information, the chancellor concluded that, regardless of which of the three values he applied—the appraiser's valuation, the contract sales prices, or the tax assessor's valuations—Dedeaux's winning bid amount of $20,000 was unconscionably low.

¶16.    The chancellor adopted the actual contract sales prices of the three parcels Dedeaux sold as the fair market value of those three parcels. Using that amount of $76,500, the chancellor subtracted $44,113.84 (the amount of the prior judgment plus the 8% annual interest and costs) and $20,000 (the amount of Dedeaux's winning bid). Based on these calculations, the chancellor concluded that "the overage amount . . . [Dedeaux] realized by purchasing these three properties at the foreclosure sale for an unconscionably low bid[] is $12,386.16." After making these findings, the chancellor reaffirmed his prior ruling that required Dedeaux to convey the unsold parcel to Coastal. The chancellor also ordered Dedeaux to pay Coastal $12,386.16 "as reimbursement of the overage amount . . . [she]

8

realized as a result of her unconscionably low bid."

¶17.　Coastal filed a motion to correct the judgment, and Dedeaux filed a motion to alter or amend the judgment. The chancellor denied Dedeaux's motion but found that Coastal correctly argued that Dedeaux's $20,000 bid was not paid to anyone and should not have been deducted from the overage amount Dedeaux realized. The chancellor therefore changed his prior judgment to reflect that Dedeaux owed Coastal $32,386.16. Aggrieved, Dedeaux appeals.

## STANDARD OF REVIEW

¶18.　"We will not disturb a chancellor's findings unless they are manifestly wrong, clearly erroneous, or apply the wrong legal standard. We review questions of law de novo." *Campbell Props. Inc. v. Cook*, 258 So. 3d 273, 275 (¶9) (Miss. 2018) (citation omitted).

## DISCUSSION

### I.　Unclean Hands

¶19.　Dedeaux first asserts that the chancellor erroneously awarded Coastal an equitable remedy because Coastal came before the chancellor with unclean hands. In his November 1, 2017 order, the chancellor found that Coastal had unclean hands because its four-year delay in paying the prior monetary judgment forced Dedeaux to pursue a foreclosure sale. The chancellor also found, however, that Dedeaux came before him with unclean hands because she purchased Coastal's four land parcels with an unconscionably low bid.

¶20.　"The doctrine of unclean hands provides that he who comes into equity must come

9

with clean hands." *Vincent v. Rickman*, 167 So. 3d 245, 249 (¶11) (Miss. Ct. App. 2015) (internal quotation mark omitted). As our caselaw explains, "the clean-hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." *Id.* In the context of domestic-relations matters, however, we have held that "the entry of a judgment for arrearages cleanses the payor's hands and allows the chancellor to review the merits of the payor's request for . . . [relief]." *Dixon v. Dixon*, 238 So. 3d 1191, 1198 (¶25) (Miss. Ct. App. 2018) (internal quotation mark omitted).

¶21. Here, the chancellor found that the sale of the 5.3-acre parcel to the McKelvins essentially cleansed Coastal's hands by satisfying its past-due monetary judgment to Dedeaux. Having so found, the chancellor was free to proceed to a review of the merits of Coastal's claim against Dedeaux. We therefore find no merit to Dedeaux's argument that the "clean-hands doctrine" continued to bar Coastal's request for equitable relief.

## II. Remaining Issues

¶22. Dedeaux's three remaining assignments of error contend that the chancellor's judgment was unsupported by legal precedent and awarded Coastal multiple inconsistent remedies while simultaneously punishing Dedeaux. For the sake of brevity, we address these arguments together.

¶23. In ordering Dedeaux to convey the unsold parcel back to Coastal and to reimburse Coastal for the overage she received from the sale of the three other parcels, the chancellor

relied on *Allied Steel Corp. v. Cooper*, 607 So. 2d 113 (Miss. 1992). In *Allied Steel* the Mississippi Supreme Court held that "absent any irregularity in the conduct of a foreclosure sale, it may not be set aside unless the sales price is so inadequate as to shock the conscience of the Court or to amount to fraud." *Id.* at 118 (internal quotation mark omitted). "A legal determination of the adequacy of the purchase price is predicated upon the establishment of the fair market value of the property. The determination of the fair market value is a question for the trier of fact." *Id.* at 118-19 (citations omitted). In determining the adequacy of a bid price, the *Allied* court further recognized that "[a] survey of Mississippi cases concluded that the threshold of unconscionability [for a bid price] lies around forty percent of fair market value." *Id.* at 120.

¶24. Here, the chancellor adopted as the fair market value the total contract sales prices for the three parcels that Dedeaux sold. Based on the overall sales price of $76,500, the chancellor concluded that Dedeaux's bid of $20,000 amounted to 26% of the parcels' fair market value. Because this fell well below the generally accepted threshold of 40%, the chancellor determined that Dedeaux's bid price was unconscionable. *See id.* As the trier of fact, the chancellor possessed the authority to determine the parcels' fair market value, and we "will respect the trial court's findings of fact when they are supported by reasonable evidence in the record and are not manifestly wrong." *Hartman v. McInnis*, 996 So. 2d 704, 711 (¶23) (Miss. 2007) (citing *Allied Steel*, 607 So. 2d at 118-19). Neither party raises any

11

dispute as to the chancellor's conclusion of the parcels' fair market value,[1] and upon review, we find that substantial credible evidence supports the chancellor's determination on this point.

¶25. Although the chancellor found Dedeaux's bid price to be unconscionably low, he expressed reluctance to set aside the land sales to the McKelvins, Alexander, and Neideffer because doing so would "affect the property rights of innocent bystanders to the parties' wrongdoing" and because Coastal had agreed to dismiss those individuals from the litigation. The chancellor did, however, reaffirm his prior ruling for Dedeaux to convey the unsold parcel of land to Coastal, which he found still had the basic effect of setting aside the foreclosure sale. *See Allied Steel*, 607 So. 2d at 118 (holding that a foreclosure sale may be set aside where "the sales price is so inadequate as to shock the conscience of the Court or to amount to fraud") (internal quotation mark omitted).

¶26. The chancellor also found that Dedeaux's sale of the three properties for $76,500 fully satisfied, and thereby extinguished, her prior monetary judgment plus interest against Coastal

---

[1] In her appellate brief, Dedeaux states the following:

[Dedeaux] readily admits that, according to her appraisal entered into evidence at the final hearing on this matter on March 13, 2017[,] . . . her bid at the . . . sheriff's sale did not meet the 36% to 40% unconscionability standard . . . as the $20,000.00 bid was approximately 24% of either the $85,100.00 appraisal or the $85,000 fair market value as determined by the chancery court. Accordingly, . . . [Dedeaux] does not dispute the court's determination of said fair market value, exclusive of . . . [the unsold parcel], as $76,500.00 . . . .

12

for $44,113.84. As a result, the chancellor next considered whether Dedeaux had received any overage amount from the land sales that should be returned to Coastal. As this Court has previously recognized, where a foreclosure sale results in funds over the amount owed on the land and the foreclosure costs, the judgment debtor is entitled to the surplus. *Estate of Walters v. Freeman*, 904 So. 2d 1140, 1142 (¶10) (Miss. Ct. App. 2004). *See also Hinton v. Rolison*, 175 So. 3d 1281, 1285 (¶11) (Miss. 2015); *O'Neal v. Ketchum*, 141 So. 3d 45, 51 (¶31) (Miss. Ct. App. 2014) (James, J., concurring in part and dissenting in part).

¶27. Here, the foreclosure sale itself did not result in a surplus to Dedeaux. The chancellor concluded, however, that Dedeaux's subsequent contracts to sell the three properties for $76,500 not only extinguished the judgment against Coastal but also resulted in a surplus. In *Central Financial Services Inc. v. Spears*, 425 So. 2d 403, 403 (Miss. 1983), the Supreme Court considered a similar question regarding "whether a mortgagee, who purchases the mortgaged property at a foreclosure sale[,] must account to the mortgagor for the surplus arising from a sale of the property by the mortgagee within two weeks for two and one-half times the amount bid by the mortgagee at the foreclosure sale." The Supreme Court concluded that the bid amount was inadequate but that the inadequacy did not require overturning the foreclosure sale. *Id.* at 405. Instead, the Supreme Court held that the mortgagee was required to account to the mortgagor for the surplus. *Id.*

¶28. In the present case, Dedeaux raises no dispute as to the chancellor's findings on the parcels' fair market value. Based on this fact and the holding of *Central Financial Services*,

13

we find no error in the chancellor's determination that Dedeaux was required to return to Coastal any overage resulting from the sale of the three properties. We therefore affirm the portion of the chancellor's judgment requiring Dedeaux to return the unsold parcel to Coastal and to reimburse Coastal for any surplus resulting from the sale of the other three properties.

¶29. We must, however, reverse and render the portion of the chancellor's judgment calculating the exact amount of the reimbursement. In determining the amount of the surplus that Dedeaux owed Coastal, the chancellor looked only at the total sales prices Dedeaux received for the three sold parcels. Although Dedeaux contracted to sell the three parcels for $76,500, the record reflects that she also incurred $9,458.63 in related expenses (closing costs and fees). After deducting from $76,500 these related expenses and Dedeaux's prior judgment plus interest, we find that the surplus amounted to $22,927.53 rather than the $32,386.16 the chancellor calculated. We therefore reverse the chancellor's judgment as to the amount of Coastal's monetary award and render a new judgment in Coastal's favor for $22,927.53.

## CONCLUSION

¶30. We affirm the portion of the chancellor's judgment ordering Dedeaux to convey the unsold parcel of land to Coastal and to reimburse Coastal for any surplus resulting from the sales of the other three parcels. However, we reverse the amount of the monetary judgment to Coastal and render a new monetary judgment in Coastal's favor for $22,927.53.

¶31. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

14

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**